## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JASON KERNS, ARCHIE KERNS and
MARY ANN KERNS,

       Plaintiffs,

vs.                                                                            No. CIV 07-0771 JB/ACT

BOARD OF COMMISSIONERS OF
BERNALILLO COUNTY, BERNALILLO COUNTY
SHERIFF DARREN WHITE, in his individual and his
official capacity, BERNALILLO COUNTY SHERIFF'S
DETECTIVES BRIAN LINDLEY, RALPH GONZALES, and
JAMES HAMSTEN, in their individual capacities, BERNALILLO
COUNTY SHERIFF DEPUTIES LAWRENCE KOREN,
SEAN CONNORS, AARON WRIGHT, TIMOTHY HIX, and
RHONDA MOYA, in their individual capacities, THE CITY OF
ALBUQUERQUE, ALBUQUERQUE POLICE DEPARTMENT
OFFICERS DREW BADER, MATT THOMPSON, RUSSELL CARTER,
ROBERT JOHNSTON and JAMES MONTOYA,
in their individual capacities, METROPOLITAN FORENSIC
SCIENCE CENTER FIREARM AND TOOL MARK EXAMINER
MIKE HAAG, in his individual capacity, and JOHN DOES 1-10,
in their individual capacities,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Joint Motion for Disclosure of Grand Jury

Transcript, filed August 20, 2008 (Doc. 43)("Joint Motion").  The Court held a hearing on October

8, 2008.  The primary issue is whether the parties have made a sufficient showing of particularized

need for the grand-jury transcript in <u>United States v. Jason Kerns</u>, No. CR 05-1776 JC (D.N.M.),

to justify the Court ordering its disclosure.  For reasons stated on the record, and for further reasons

consistent with those already stated, the Court will grant the motion.

## PROCEDURAL BACKGROUND

Jason Kerns and his parents initiated this lawsuit over incidents leading up to and surrounding Jason Kerns' federal prosecution for allegedly shooting down a police helicopter in Albuquerque, New Mexico.  The United States dismissed the indictment against Jason Kerns in May of 2006, and the Kerns brought this action on August 9, 2007.  See Complaint for Damages Caused by the Deprivation of Civil Rights and Other Tortious Conduct ¶ 123, at 14, filed August 9, 2007 (Doc. 1).  On November 26, 2007, the Kerns filed a First Amendment Complaint in which they allege that various officials and various officers from the Bernalillo County Sheriff's Department and from the City of Albuquerque's Police Department committed numerous torts against them, including the malicious prosecution of Jason Kerns.  See First Amendment Complaint ¶¶ 173-77, at 22-23, filed November 26, 2007 (Doc. 5).  The First Amended Complaint alleges that "[o]ne or more of the Defendant law enforcement officers testified before a federal grand jury or caused to be submitted to that grand jury recklessly false inculpatory information, and at the same time omitted favorable, exculpatory information."  Id. ¶ 122, at 16.

The parties move the Court, under rule 6(e)(3)(E)(I) of the Federal Rules of Criminal Procedure, to order the disclosure of the grand-jury transcript that led to the indictment of Jason Kerns on August 17, 2005, in United States v. Jason Kerns.  The parties jointly request the release of the transcript "to delve into the allegations" set forth in the First Amended Complaint.  Joint Motion ¶ 3, at 2.  The United States Attorney's Office for the District of New Mexico was provided a copy of the Joint Motion pursuant to rule 6(e)(3)(F)(i) and opposes disclosure of the transcript. See Joint Motion ¶ 8, at 2.

The parties argue that disclosure of the grand-jury transcript is necessary to avoid injustice in this case and that their need for the transcript outweighs the need to preserve the secrecy of the

grand jury in this situation.  The parties note that the criminal case against Jason Kerns that resulted from the grand jury's proceedings ended in May 2006.  See id. ¶ 4, at 2.  They contend that injustice will result without disclosure, because one of the counts in the First Amended Complaint is for malicious prosecution, meaning the "actual evidence presented to the grand jury will play a central role in the claims and defenses asserted in this litigation."  Joint Motion at 3.  According to the parties, the Defendants will argue that the grand jury's probable-cause determination insulates them from liability, while Jason Kerns will "need to show that the officers involved concealed or misrepresented material facts from the prosecutor, the grand jury, or the trial court."  Id. at 4.

The parties maintain that their request waives any interest they had in the secrecy of the grand-jury proceedings at issue, and that under the test laid out in Douglas Oil Co. v. Petrol Shops Northwest, 441 U.S. 211 (1979), the only interest in retaining secrecy left is to encourage "the free disclosure of evidence by persons possessing that information."  Joint Motion at 6.  Accordingly, the parties argue that the need for secrecy is diminished here, and that their need "to have access to the grand jury transcript to guide them through discovery, summary judgment motions, and, if applicable, a trial" outweighs any remaining interest in preserving secrecy.  Id. at 7.

Finally, the parties emphasize that they are requesting only what they believe is necessary for their respective cases.  While the parties are requesting the full transcript, they ask that the names of grand jurors, United States Attorney's Office personnel, and anyone else "who is not a witness presenting evidence" be redacted from the released transcript.  Id. at 8.  The parties also note that they welcome any protective order the Court wishes to impose on "making copies of the transcript or disclosing it outside the litigation."  Id.

In opposition to the parties' request, the United States argues that the parties have not met their burden of showing a particularized need for the transcript.  See United States' Response to

-3-

Joint Motion for Disclosure of Grand Jury Transcript at 2, filed September 15, 2008 (Doc. 52)("Response").  The United States argues that injustice will not result from a failure to disclose the grand-jury transcript.  First, the United States contends that mere relevance of the testimony in the transcript is insufficient for disclosure.  See id. at 3.  Second, the United States maintains that "a grand jury's decision to indict" will not absolve a party of liability for malicious prosecution.  Id. Third, the United States asserts that the First Amended Complaint demonstrates that the parties have access to an ample amount of information and that, if they "truly need to know what occurred during the grand jury proceeding, they need only ask the witnesses who testified."  Response at 4.

The United States also argues that the parties have not shown their interests in disclosure are superior to the interest in grand-jury secrecy.  The United States notes that, while the conclusion of a criminal prosecution reduces the need for secrecy, it does not eliminate the need.  See id.  The United States contends that the parties' need is a generalized one and that, "without a particular, cognizable reason for disclosure," the interest in secrecy "far outweighs" the parties' interest.  Id. at 5.  The United States concludes with a request that, should the Court order disclosure, the Court review the transcript in camera and reveal only those discrete portions necessary to the litigation. See id.

The parties reply that they have met their burden and that the case law allows for the disclosure of an entire grand-jury transcript, and not just portions of it.  The parties disagree with the United States' opinion that a grand jury's indictment is not a defense to a claim of malicious prosecution.  See Joint Reply in Support of the Motion for Disclosure of Grand Jury Transcript at 2, filed October 2, 2008 (Doc. 58)("Reply").  They contend that whether such a defense will succeed is a factual issue, and that the defense is not barred as a matter of law.  See id.

The parties also argue that "when there is a showing 'that criminal procedure is subverted

. . . wholesale discovery and production of the grand jury transcript would be warranted.'" <u>Id.</u> at 3 (quoting <u>United States v. Proctor & Gamble Co.</u>, 356 U.S. 677, 684 (1958)).  Finally, the parties contend that the United States errs in characterizing their request as a generalized one and a request made only to increase the efficiency of discovery.  They need the transcript, they maintain, "to prove their respective cases."  <u>Id.</u>  at 4.  By contrast, they argue, the United States "has not forwarded a single secrecy interest that could begin to outweigh" their particularized need.  <u>Id.</u>

At the hearing, Marc Lowry -- counsel for the Plaintiffs but speaking at the hearing on behalf of all the parties -- agreed with the Court that the Kerns' malicious prosecution and malicious abuse-of-process claims were the only causes of action in the First Amended Complaint that were relevant to disclosure of the grand-jury transcript.  <u>See</u> Transcript of October 8, 2008 Hearing at 3:23-4:8 (Court & Lowry)("Tr.").[1]  The parties also agreed that it was the third element of a malicious prosecution claim -- the lack of probable cause -- that was important.  <u>See</u> <u>id.</u> at 4:12-21.

Charles Barth, representing the United States, stated that only named defendant on the indictment the grand jury returned was Jason Kerns and that there were, to his knowledge, no other parties with a privacy interest who were not already represented before the Court.  <u>See</u> <u>id.</u> at 9:4-19 (Barth & Court).  Mr. Lowry stated that the plaintiffs would primarily use the transcript as part of showing the intent of the officers.  <u>See</u> <u>id.</u> at 12:24-13:15 (Court & Lowry).  Stephanie Griffin, attorney for Defendant Mike Haag, a forensic scientist who testified before the grand jury, clarified that the Defendants needed the transcript to avoid a "he-said, she-said sort of situation" about Haag's testimony to the grand jury.  <u>Id.</u> at 30:22-31:10 (Court & Griffin).  Daniel Macke, attorney for the Bernalillo County Defendants, stated that his clients would not necessarily need the information, but

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that he needed it as a shield to the extent that the Kerns used the grand-jury testimony against them as a sword.  See id. at 33:14-22 (Court & Macke).

Jennifer Rozzoni, also representing the United States, conceded that the interests in grand-jury secrecy were diminished in this case, but maintained that particularized need must still be demonstrated.  See id. at 35:7-10 (Rozzoni).  Ms. Rozzoni also stated that she was not aware of any unusual secrecy interests regarding the transcript of which the Court needed to be aware.  See id. at 35:17-25 (Court & Rozzoni).  The United States also conceded that the grand jury's determination of probable cause might not be a defense, suggesting the transcript was relevant, but maintained that relevance was not the criterion for disclosure.  See id. at 37:18-38:12.

Mr. Lowry stated that an attorneys' eyes-only restriction for the transcript would not be too difficult to work with, although at some point the parties would like to be able to use the transcript during depositions.  See id. at 45:12-46:4 (Court & Lowry).  Ms. Griffin expressed concerns about an attorneys' eyes-only restriction because her client, Haag, would be asked what he had told the grand jury, which was over three years ago, and it would be unfair for him not to be able to review the transcript.  See id. at 47:10-48:3 (Griffin & Court).  The Court decided to order production of the transcript pursuant to a confidentiality order.  See id. at 54:23-55:1 (Court).

## THE DOUGLAS OIL FACTORS AND DISCLOSURE
## OF GRAND-JURY TRANSCRIPTS

A court called upon to determine whether grand-jury transcripts should be released is vested with substantial discretion.  See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. at 223.  Under rule 6(e)(3)(E)(i) a court may order disclosure of grand-jury material "preliminarily to or in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E)(i).  The Supreme Court of the United States has stated that grand-jury secrecy is meant to advance five particular interests:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. at 219 n.10 (internal quotation marks omitted)(brackets in original).   The Supreme Court has described the proper standard for determining when the presumption against disclosure of grand-jury matters can be overcome:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.  Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations. . . .  For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries.

Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. at 222 (footnote omitted). "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." Id. at 223.  Still, a party seeking disclosure must demonstrate a particularized need, such as using "'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'"  Id. at 222 n. 12 (quoting United States v. Proctor & Gamble Co., 356 U.S. at 683).[2]

Disclosure is not appropriate where access to a grand-jury transcript is "nothing more than a matter of saving time and expense."  United States v. Sells Engineering, Inc., 463 U.S. 418, 431 (1983).  The Supreme Court has also stated that "[i]t is only when the criminal procedure is

---

[2] United States v. Proctor & Gamble Co. was a civil antitrust case.

subverted that 'good cause' for wholesale discovery and production of a grand jury transcript would be warranted."  United States v. Proctor & Gamble Co., 356 U.S. at 684.

### THE ELEMENTS OF FEDERAL MALICIOUS PROSECUTION CLAIMS AND NEW MEXICO MALICIOUS ABUSE-OF-PROCESS CLAIMS

Malicious prosecution and malicious abuse-of-process are distinct torts.  Malicious prosecution is recognized as a federal cause-of-action. Malicious abuse-of-process is a New Mexico cause of action.  The two torts have different elements, but both are designed to provide a remedy for the unlawful initiation of legal proceedings against a person.

**1.      Malicious Prosecution.**

A claim for a constitutional violation based on malicious prosecution requires that five elements be met.  As the United States Court of Appeals for the Tenth Circuit has stated:

> Under our cases, a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008).  Probable cause is a requirement for a malicious prosecution claim, but "false information" that was submitted to the finder of probable cause cannot be considered when ascertaining whether probable cause existed at the time of the probable-cause determination.  Id. at 801.

**2.      Malicious Abuse-of-Process.**

New Mexico has combined the torts of malicious prosecution and abuse of process into a single tort of malicious abuse-of-process.  See DeVaney v. Thriftway Marketing Corp., 124 N.M. 512, 518, 953 P.2d 277, 283 (1997), abrogated on other ground by Fleetwood Retail Corp. of New Mexico v. LeDoux, 142 N.M. 150, 164 P.3d 31 (2007).  A plaintiff must establish the following four

-8-

elements to prevail on a claim for malicious abuse of process: "(i) the initiation of judicial proceedings against the plaintiff by the defendant; (ii) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (iii) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (iv) damages." DeVaney v. Thriftway Marketing Corp., 124 N.M. at 518, 953 P.2d at 283. With respect to the first element, the Supreme Court of New Mexico has stated that a prosecutor's decision to initiate charges will ordinarily prevent liability against a defendant. See Weststar Mortg. Corp. v. Jackson, 133 N.M. 114, 120-21, 61 P.3d 823, 829-30 (2002). The Supreme Court of New Mexico went on to state, however, that "the defendant can be regarded as an instigator of the proceeding . . . if he [or she] communicates material information falsely or inaccurately and the prosecutor relies upon his [or her] statement." Id., 133 N.M. at 121, 61 P.3d at 830.

## ANALYSIS

The Court will order production of the grand-jury transcript, subject to certain restrictions to maintain the secrecy of the grand-jury proceedings to a reasonable extent. The Court concludes that the interest in secrecy is reduced because all the relevant parties to the grand-jury proceedings are now parties to this civil action. Disclosure also appears to be necessary to allow certain claims in this case to be litigated. While the Court will order the disclosure of the transcript, it will put in place measures to limit the breach of grand-jury secrecy.

## I.   THE PARTIES HAVE SHOWN A SUFFICIENT, PARTICULARIZED NEED FOR THE GRAND-JURY TRANSCRIPT.

Because the parties seek the grand-jury transcript for use in an ongoing litigation, the Federal Rules of Criminal Procedure authorize the Court to order disclosure of the transcript. See Fed. R. Crim. P. 6(e)(3)(E)(i).   Disclosure is not automatic, however, but requires a showing of

particularized need and that the transcript is "needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. at 222.  The Court concludes that the parties have met this burden.

"[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." Id. at 223.  Of the five purposes of grand-jury secrecy discussed in Douglas Oil Co. v. Petrol Stops Northwest, see id. at 219 n.10, only the interest in encouraging "free and untrammeled disclosures by persons who have information with respect to the commission of crimes" is in play here, id.  The defendant in the grand-jury proceeding is now a plaintiff actively seeking disclosure of the transcript.  The grand-jury proceeding has ended, and there is no longer a criminal prosecution pending.   In these circumstances, as the United States concedes, see Tr. at 35:7-10 (Rozzoni), only the interest in "free and untrammeled disclosures" is at issue and the interest in secrecy is therefore lessened.

Even with a lesser burden, however, the parties still must show a particularized need to avoid injustice in the current case.  The parties have shown this need because two of the claims, malicious prosecution and malicious abuse-of-process, will heavily depend upon what occurred before the grand jury.  One of the elements a plaintiff in a malicious-prosecution claim under federal law must demonstrate is a lack of probable cause.  See Pierce v. Gilchrist, 359 F.3d 1279, 1294 (10th Cir. 2004).  This determination could well turn on the testimony before the grand jury that led to Jason Kerns' indictment.  Moreover, the Defendants have stated they intend to use the indictment as a defense against the malicious prosecution.  An indictment does not seem to be an absolute bar to raising a claim of malicious prosecution; rather the determination of probable cause is a fact-driven inquiry.  If Haag, or another Defendant, deliberately supplied false or misleading information to the

grand jury, then the grand jury's decision to indict would not absolve that witness of liability. <u>See</u> <u>id.</u> at 1292-93 (holding that forensic analyst who with "knowing and reckless disregard for the truth, informed the police and prosecutorial authorities" that exculpatory forensic evidence was inculpatory could be held liable for malicious prosecution despite initiation of prosecution). As the Tenth Circuit, in <u>Pierce v. Gilchrist</u>, approvingly quoted:

> [A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial - none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision. . . .
>
> *If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.*

<u>Id.</u> at 1292 (quoting <u>Jones v. City of Chicago</u>, 856 F.2d 985, 994 (7th Cir. 1988))(emphasis in original). What testimony was actually presented to the grand jury thus becomes of central importance to the claim. That testimony will relate both to: (i) whether misleading or false information was provided to the grand jury, <u>see</u> <u>Pierce v. Gilchrist</u>, 359 F.3d at 1295 (stating plaintiff must show that "falsification of inculpatory evidence or suppression of exculpatory evidence was necessary to the finding of probable cause" under probable-cause element of malicious prosecution); and (ii) whether the testifying Defendant acted with malice, which the evidence presented to the grand jury, and the evidence left out, will be highly probative of. The grand-jury transcript would also be useful in establishing a malicious abuse-of-process claim or defending against that claim. Showing intent is an element of malicious abuse-of-process. <u>See</u> <u>DeVaney v. Thriftway Marketing Corp.</u>, 124 N.M. at 518, 953 P.2d at 283. Just as the transcript would be important to show malice, or lack of malice, it would be probative of showing a primary motive of misusing process for illegitimate ends in a malicious abuse-of-process claim. Indeed, the Court does

not see how either claim could be adequately litigated in these circumstances without access to the grand-jury transcript.

The Supreme Court has held that, even in a civil case, a particularized need might involve using a "'transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. at 222 n. 12 (quoting United States v. Proctor & Gamble Co., 356 U.S. at 683). Establishing a claim or defense against a claim would meet and probably exceed this threshold level for a particularized need. Although the transcript will undoubtedly prove useful in discovery, it does not seem to the Court that the parties are merely trying to save "time and expense." United States v. Sells Engineering, Inc., 463 U.S. at 431. Given the reduced interest in secrecy and the strong particularized need the parties have for establishing and defending against two of the claims in this case, the parties have adequately shown that the grand-jury transcript should be disclosed. Disclosure of the entire transcript is a relatively significant action, but is warranted when the "criminal procedure is subverted," which is what the Kerns' allege. United States v. Proctor & Gamble Co., 356 U.S. at 684. Furthermore, the Court can fashion restrictions that will mitigate these concerns.

## II.     THE COURT WILL ORDER PRODUCTION OF THE TRANSCRIPT, SUBJECT TO CERTAIN RESTRICTIONS TO PROTECT GRAND-JURY SECRECY.

Although the Court will order production of the grand-jury transcript, the secrecy of grand-jury proceedings remains an important interest. The Court will therefore impose special restrictions on the use and disclosure of the transcript to maintain the vestiges of grand-jury secrecy to a reasonable degree. As stated at the hearing, the Court will place several limitations on the use of the transcript.

The Court will require the United States to redact the names of grand jurors, court

employees, and United States Attorney's Office employees, as well as other names as necessary, with the exception of the names of the witnesses at the proceeding. The witnesses names should be left in. If, upon review of the transcript, the United States believes that further redaction is necessary, the United States should inform the Court. See Tr. at 55:4-15 (Court).

The United States will require the parties to prepare a confidentiality order governing the use of the grand-jury transcript. The order should be presented to the United States for the United States' consent as to the form of the confidentiality order. The order should also reflect that the United States will be responsible for redaction of the transcript in accordance with the Court's ruling. See id. at 55:1-4.

The confidentiality order should include, at a minimum, several provisions. First, the order should limit the number of copies of the transcript that are made. The number of copies should be no more than one per attorney at most. See id. at 55:21-24. Second, the order should prohibit the disclosure of the transcript outside the present litigation. See id. at 55:24-56:2. Third, the order should require that the transcript initially be limited to disclosure only to the attorneys in this case. The parties do not need to return to court to disclose the transcript to witnesses at depositions, so long as several conditions are meet. All parties to the litigation must unanimously agree to move past the attorneys' eyes-only phase. Additionally, the parties must send a letter to the United States Attorney's Office for the District of New Mexico indicating that the parties intend to move beyond the attorneys' eyes-only phase. The United States will have ten days from receipt of the letter to object; otherwise, the parties will be allowed to disclose the transcript to witnesses at depositions. See id. at 56:3-22.

Once the parties have moved beyond the attorneys' eyes-only phase, the parties may disclose the transcript, but should exercise restraint and be circumspect. Moreover, any person to whom any

portion of the grand-jury transcript is disclosed must sign a confidentiality order agreeing not to divulge the contents of the transcript. See id. at 56:6-9. The confidentiality order for the parties should contain all these restrictions described above and may also contain further restrictions that the parties decide to include. The main confidentiality order should also have attached copies of the secondary confidentiality order that witnesses to whom the transcript is disclosed will sign. This secondary order should also be presented to the United States along with the main confidentiality order, for the United States' consent.

The United States will file, under seal, a copy of the transcript with the Court. See id. at 57:6-8 (Court & Barth). The United States will also produce one copy of the transcript to each party's attorney in the present litigation. Each copy of the transcript will note on each page that, per Court order, the transcript is not to be reproduced or copied. See id. at 57:1-6.

**IT IS ORDERED** that the Joint Motion for Disclosure of Grand Jury Transcript is granted. The Court will order disclosure of the grand-jury transcript for United States v. Jason Kerns, No. CR 05-1776 JC (D.N.M.), subject to the restrictions stated in this memorandum opinion and order.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Marc M. Lowry
Carolyn M. ("Cammie") Nichols
Rothstein, Donatelli, Hughes, Dahlstrom,
  Schoenburg & Bienvenu, LLP
Albuquerque, New Mexico

  _Attorneys for the Plaintiff_

-14-

Daniel J. Macke
Robles, Rael, & Anaya, P.C.
Albuquerque, New Mexico

     *Attorneys for the Defendants Board of Commissioners of*
        *Bernalillo County, Bernalillo County Sheriff Darren*
        *White, Bernalillo County Sheriff's Detectives Brian Lindley,*
        *Ralph Gonzales, James Hamsten, Bernalillo County*
        *Sheriff's Deputies Lawrence Koren, Sean Connors, Aaron*
        *Wright, Timothy Hix, and Rhonda Moya.*

Stephanie M. Griffin
  Assistant City Attorney
Albuquerque City Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Defendants The City of Albuquerque,*
        *Albuquerque Police Department Officers Drew Baden,*
        *Matt Thompson, Russell Carter, Robert Johnston,*
        *James Montoya, and Metropolitan Forensic Science*
        *Center Firearm and Tool Mark Examiner Mike Haag.*

Gregory J. Fouratt
  United States Attorney
Charles L. Barth
Jennifer Rozzoni
  Assistant United States Attorneys
Albuquerque, New Mexico

     *Attorneys for the United States of America*