IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON KERNS, ARCHIE KERNS, and
MARY ANN KERNS,

 Plaintiffs,

vs.                   No. CIV 07-0771 JB/ACT

BOARD OF COMMISSIONERS OF
BERNALILLO COUNTY, BERNALILLO COUNTY
SHERIFF DARREN WHITE, in his individual and his
official capacity, BERNALILLO COUNTY SHERIFF'S
DETECTIVES BRIAN LINDLEY, RALPH GONZALES, and
JAMES HAMSTEN, in their individual capacities, BERNALILLO
COUNTY SHERIFF DEPUTIES LAWRENCE KOREN,
SEAN CONNORS, AARON WRIGHT, TIMOTHY HIX, and
RHONDA MOYA, in their individual capacities, THE CITY OF
ALBUQUERQUE, ALBUQUERQUE POLICE DEPARTMENT
OFFICERS DREW BADER, MATT THOMPSON, RUSSELL CARTER,
ROBERT JOHNSTON and JAMES MONTOYA,
in their individual capacities, METROPOLITAN FORENSIC
SCIENCE CENTER FIREARM AND TOOL MARK EXAMINER
MIKE HAAG, in his individual capacity, and JOHN DOES 1-10,
in their individual capacities,

 Defendants.

**MEMORANDUM OPINION AND ORDER**

 **THIS MATTER** comes before the Court on the Plaintiffs' Motion for Leave to File Supplemental Exhibit to Their Reply Brief & Motion for Leave to Disclose a New Expert Witness and Disclose an Amended Expert Report, filed September 15, 2009 (Doc. 240).  The Court held a hearing on October 27, 2009.  The primary issues are: (i) whether the Court should allow Plaintiffs Jason Kerns, Archie Kerns, and Mary Ann Kerns to supplement their Plaintiffs' Reply to the County Defendants' Response to the Motion for Summary Judgment as to Liability on Counts II, IV & V of the First Amended Complaint, filed August 24, 2009 (Doc. 215) to add the Declaration of Nelson

E. Welch as an additional exhibit; (ii) whether the Court should grant the Plaintiffs leave to disclose Dietrich Evans as a potential expert witness in this case, notwithstanding the fact that the deadline for identifying expert witnesses has passed; and (iii) whether the Court should grant the Plaintiffs leave to file an amended expert report by Nelson Welch.  Because the Court finds that the Plaintiffs have demonstrated good cause and excusable neglect for the delay, the Court will grant the motion.

## FACTUAL BACKGROUND

This case involves the investigation into the August 6, 2005 shooting of the Bernalillo County Sheriff Department's helicopter, Metro One, which crashed into the backyard of a residence near the intersection of Golf Course Road and Paradise Boulevard in Albuquerque, New Mexico. The Bernalillo County Sheriff's Department arrested J. Kerns on August 15, 2009, and a grand jury indicted him on federal charges.  On May 10, 2006, the federal charges against J. Kerns were dismissed.  J. Kerns, A. Kerns, and M. Kerns brought this federal suit against those involved in the investigation, arrest, and prosecution.

The facts relevant to this motion pertain to Defendant Bernalillo County Sheriff's Detective Brian Lindley's and Defendant Bernalillo County Sheriff's Deputy Lawrence Koren's findings regarding the trajectory angle of the bullet that shot down Metro One.  The Plaintiffs assert that "[t]he trajectory information provided by Koren to Lindley for use in his affidavit for Jason Kerns' arrest was . . . demonstrably and recklessly false," and "[t]he true trajectory information would have been known to any person with a basic understanding of mathematics, and the failure to disclose the true distance of the shooter in the arrest warrant shows a reckless disregard for the truth."  Amended Complaint ¶¶ 113 & 119, at 14.  The Plaintiffs are seeking summary judgment on their 42 U.S.C. § 1983 claims for false arrest and imprisonment, and for malicious prosecution, based on Lindley's and Koren's alleged reckless disregard for the truth when including their trajectory analysis in the

arrest-warrant affidavit.  <u>See</u> Plaintiffs' Motion for Summary Judgment as to Liability on Counts II, IV & V of the First Amended Complaint, filed July 27, 2009 (Doc. 189).

In filling out the affidavit for an arrest warrant for J. Kerns, Lindley relied on trajectory data that Koren provided, and a distance calculation of how far the shooter was from Metro One when it was shot, which Lindley and Koren found using another Bernalillo County Sheriff's Department helicopter, Metro Two.  <u>See</u> Arrest Warrant Affidavit Criminal Complaint (dated August 15, 2005) at 5, filed July 17, 2009 (Doc. 182-5).  That data indicated that the bullet that shot down Metro One entered the nose of the helicopter at an angle approximately sixteen-degrees from parallel to the earth's surface.  <u>See id.</u>  That angle is relevant because, based on the estimated height at which the helicopter was flying and the angle at which it was hovering, a shot from ground-level that entered the helicopter at a sixteen degree angle would have to come from approximately one-thousand-thirty feet away.  <u>See id.</u>  The Plaintiffs' residence was approximately one-thousand-seventy feet from the site of the shooting, and J. Kerns represented to the officers during the investigation that he was about forty feet away from the Plaintiffs' residence at the time that the shot was fired.  <u>See id.</u>  Combined with Lindley's belief that the shot came from the general direction of the Plaintiffs' residence, this trajectory data appeared to implicate J. Kerns as the shooter.  Lindley included these purported facts and inferences in his seven-page Arrest Warrant Affidavit:

> On August 11, 2005 Deputy L. Koren contacted Affiant.  Deputy L. Koren is the Bernalillo County Sheriff's Department Helicopter mechanic.  Deputy L. Koren stated that he was able to retrieve data from the helicopter GPS navigational system. Deputy L. Koren stated that from the data collected he learned the helicopter's heading (direction the helicopter was facing) prior to the crash and the altitude of the helicopter prior to the crash.  From this data, combined with the statements of the pilot and co-pilot, as well as an analysis of the bullet's trajectory through the helicopter's cockpit, Deputy L. Koran was able to obtain an approximate distance at which the rifle, which shot down the helicopter, was fired.  This distance was approximately 1630 feet.  This distance is well within the range of a 30-06 caliber rifle.

>On August 12, 2005 Deputy L. Koren and Affiant flew over the crash site and positioned the helicopter (Metro 2) at the precise GPS coordinates obtained from the Metro 1 helicopter's GPS at the time that Metro 1 was shot down. Detectives located on the ground in several locations measured, with a laser-measuring device, the distance from these locations to the location of the helicopter (Metro 2) while hovering at that precise location. The distance from Jason Kern's residence to the same location that the helicopter was hovering at the time it was shot down was approximately 1670 feet (556 yrds), within the distance that the Marine Corps stated that Jason Kerns was trained to shoot man sized targets.

Id.

Welch, the Plaintiffs' expert, conducted his own analysis and formed a theory on the trajectory of the bullet that hit Metro One. According to Welch's original assessment, the measured trajectory angle was between thirty degrees and thirty-five degrees, which he stated could not be achieved from the Plaintiffs' residence one-thousand-sixty-three feet away. See Letter from Nelson Welch to Marc Lowry at 2 (dated November 6, 2008), filed October 1, 2009 (Doc. 243-2). He concluded that "[t]he arrest affidavit about the trajectory is therefore also clearly in error." Letter from Nelson Welch to Marc Lowry at 2. In his initial report, Welch states: "The data of heading, pitch and roll angle of the helicopter is still unknown as no data has been supplied and could change this condition." Id. at 2.[1] Welch supplemented his report on December 3, 2008. See Reply Exhibit 2, Welch's Supplement at 3 (dated Dec. 3, 2008), filed October 1, 2009 (Doc. 243-3). In his supplemental report, he states:

>While I have yet to determine the precise location of the helicopter when it was struck by the bullet, as I have not yet reviewed the GPS[2] data collected from the helicopter, I do not believe that this trajectory angle can be achieved from the Kerns

---

[1] Heading, pitch, and roll are the three dimension of rotation used in finding flight dynamic parameters. Roll, pitch and heading refer to rotations about the respective axes starting from a defined equilibrium state. See Flight Dynamics, http://en.wikipedia.org/wiki/Flight_dynamics.

[2] Metro One is equipped with a global-positioning-system ("GPS") navigational device, which continuously collects data about the location of the helicopter.

   residence as their home is too far away from the helicopter. Again, the arrest warrant affidavit was drafted in such a manner as to suggest that the shot that hit the helicopter came from within forty (40) feet from the Kerns home. This was simply not possible.

   I reserve the right to modify my opinion on the trajectory analysis once I have reviewed the GPS data to determine the heading, pitch, and roll angle of the helicopter, in addition to its precise location when it was shot, to opine more precisely on the trajectory analysis.

Welch's Supplement at 3 (footnote added).

## **PROCEDURAL BACKGROUND**

  The Plaintiffs and the County Defendants[3] each filed motions for summary judgment on the issue whether Lindley and Koren should be held liable for including what the Plaintiffs allege is a recklessly false estimate of the distance a shooter would have been standing away from the helicopter when the helicopter was shot. The Court will decide whether a material factual issue exists in this case whether Lindley and Koren were recklessly indifferent to the truth when estimating the distance that the shooter was standing relative to the helicopter when Metro One was shot and when including that estimate in Lindley's arrest-warrant affidavit. While the County Defendants contend in their summary judgment motion that the information in Lindley's arrest affidavit was not recklessly false, see Doc. 182 at 26, the Plaintiffs argue that, using photographs to make an angle measurement, Defendant Mike Haag measured an entry angle of twenty-four to twenty-five degrees, rather than sixteen degrees, as Koren calculated. See Motion at 2. The Plaintiffs also challenge the rudder position Koren used when making his analysis. See Motion at 2. They also rely on Welch's conclusion that Koren's trajectory angle was in error. See Letter from

---

[3] The County Defendants are Defendant Bernalillo County Sheriff Darren White, Defendant Bernalillo County Sheriff's Deputy Lawrence Koren, Defendant Bernalillo County Sheriff's Detective Brian Lindley, and Defendant Board of Commissioners of Bernalillo County.

Nelson Welch to Marc Lowry at 2.

The Plaintiffs request leave of the Court under rule 6(b) of the Federal Rules of Civil Procedure to allow the Plaintiffs to file the Declaration of Nelson E. Welch as supplemental Exhibit 6 in support of their reply to their motion for summary judgment. In addition, the Plaintiffs seeks leave to disclose Dietrich Evans as a potential expert witness in this case and leave for Welch to file an amended expert report. The Plaintiffs argue that they received in discovery from Defendant Mike Haag an electronic data file which the Plaintiffs could not read, and that they did not learn that the file contained a laser scanned image of Metro One until Haag's deposition. See Motion at 5. The Plaintiffs contend that, by the time they learned of the information, the deadline for expert disclosures had passed. See Motion at 5. They also explain that, although the Bernalillo County Sheriff's Department had Haag take a laser-scan of Metro One, they never requested for him to do the trajectory measurement based on the laser scan. See Motion at 7. The Plaintiffs attempted to find a provider who could assist them in interpreting the data, but were unable to do so until July 2009, when they located someone who had access to the proprietary software necessary to interpret the data -- Evans. See Motion at 7. Once the Plaintiffs obtained a written declaration from Evans, the Plaintiffs' expert -- Welch -- was able to estimate more accurately the distance between the shooter and the helicopter. See Motion at 7. It is this declaration that the Plaintiffs seek leave to file.

The Plaintiffs contend that they have shown good cause. They stress that they were unaware of the existence of the laser scan until December 15, 2008. They argue that they were aware that they would not be able to secure a formal declaration in time to file it with their reply to the County Defendants' motion for summary judgment, and thus included a footnote in their pleading requesting additional time to do so. The Plaintiffs also notified the County Defendants on August 28, 2009,

that, while they do not anticipate calling Evans as a witness at trial, he may be necessary as a rebuttal witness. See Motion at 8. The Plaintiffs also state that they do not oppose the Court granting leave to the Defendants to depose Evans and Welch about the new trajectory information. See Motion at 10.

In response, the County Defendants argue that, in the interest of judicial economy and fundamental fairness, the Court should deny the Plaintiffs' motion. See Defendants' Response to Plaintiffs' Motion for Leave to File Supplemental Exhibit 6 to Their Reply Brief & Motion for Leave to Disclose a New Expert Witness and Disclose an Amended Report at 1-2, filed September 25, 2009 (Doc. 241). The County Defendants argue that seeking leave to respond to arguments raised on summary judgment is inappropriate. They argue that the Plaintiffs have failed to show good cause or excusable neglect.

In reply, the Plaintiffs argue that the information they seek leave to file does not come as a surprise to the County Defendants, as Welch stated in his original disclosures that he needed additional information to complete his trajectory analysis. See Plaintiffs' Reply in Support of Their Motion for Leave to File Supplemental Exhibit 6 & Motion for Leave to Disclose a New Expert Witness and Disclose an Amended Expert Report at 4, filed October 1, 2009 (Doc. 243). The Plaintiffs also argue that permitting disclosure will not disrupt the trial or prejudice the County Defendants at trial, because of the pending interlocutory appeal to the United States Court of Appeals for the Tenth Circuit. See Reply at 4. The Plaintiffs contend that they requested leave from the Court in their reply to their summary judgment motion, and it was thus timely. See Reply at 5.

At the hearing, Marc Lowry, the Plaintiffs' attorney, argued that Welch's initial report did not contain a complete trajectory analysis, which was not for lack of desire or intention, but because he lacked the raw data necessary to conduct the analysis. See Transcript of Hearing at 5:24-6:2

(taken October 27, 2009)(Lowry)("Tr.").[4]  He argued that the Plaintiffs are not putting forward a new theory, but are trying to quantify their theory with actual data.  See Tr. at 8:6-9 (Lowry). Mr. Lowry also argued that there is no prejudice to the Defendants, as they have had in their possession the data that Welch and Evans used all along and could have interpreted it at any time. See Tr. at 8:18-23 (Lowry).  Daniel Macke, the County Defendants' attorney, questioned why this motion was not filed until after all of the summary judgment briefings, and questioned the necessity of this information if the Plaintiffs were able to file their summary judgment motions without it. See Tr. at 14:16-15:11 (Macke).

## LAW REGARDING EXTENSIONS OF TIME

Rule 6(b) of the Federal Rules of Civil Procedure governs the circumstances under which a court can grant a party an extension of time to perform a specific act. The rule states:

> **(b) Extending Time.**
>
> > **(1) In General**. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> >
> > > (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> > >
> > > (B) on motion made after the time has expired if the party failed to act because of excusable neglect.
> >
> > **(2) Exceptions.** A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b) (bold in original).  "Good cause, necessary for an extension of time under rule 6(b)(1)(A), generally means a substantial reason amounting in law to a legal excuse for failing to perform an act required by law." United States v. Bd. of County Comm'rs of the County of Dona

---

[4] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Ana, No. CIV 08-0501, 2010 U.S. Dist. LEXIS 21578, at *8 (D.N.M. Feb. 18, 2010) (Browning, J.)(citing Black's Law Dictionary 692 (6th ed.1990)).  The Tenth Circuit reviews the district court's decision to consider an untimely motion for abuse of discretion.  Quigley v. Rosenthal, 427 F.3d 1232, 1237 (10th Cir. 2005).

The court may "for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Hamilton v. Water Whole Int'l Corp., 302 Fed. Appx. 789, 798 (10th Cir. 2008)(citing Fed. R. Civ. P. 6(b)(1)(B)); Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)("[S]ome showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required")(quoting Winters v. Teledyne Movible Offshore. Inc., 776 F.2d 1304, 1305 (5th Cir. 1985); In re Four Seasons Sec. Laws Litigation, 493 F.2d 1288, 1290 (10th Cir. 1974) ("[A] finding of excusable neglect under Rule 6(b)[(1)(B)] requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period.").  "[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)."  Quigley v. Rosenthal, 427 F.3d 1232, 1238 (10th Cir.2005).

In determining whether a movant has shown excusable neglect, a court should consider the circumstances, including: (i) the danger of prejudice to the opposing party; (ii) the length of the delay and its potential impact on the judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith.  See Schupper v. Edie, 193 Fed. Appx. 744, 746 (10th Cir. 2006)(citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 395 (1993)(stating factors in the context of Bankruptcy Rule 9006(b)); Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1494 (10th Cir. 1995).

The Tenth Circuit has stated that the reason for delay is an important, if not the most important, factor in this analysis.  See Hamilton v. Water Whole Int'l Corp., 302 Fed. Appx. at 798 (citing United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004)(analyzing the excusable neglect standard in the context of Federal Rule of Appellate Procedure 4(b)(4), where the party filed an untimely notice of appeal)).

## LAW REGARDING SUPPLEMENTATION OF EXPERT REPORTS

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure provides that an expert witness' report should contain "a complete statement of all [the] opinions" he or she will be expressing.  Fed. R. Civ. P. 26(a)(2)(B).  Pursuant to rule 26(e), a party is under a duty to supplement a rule 26(a)(2)(B) expert report "if the party learns that in some material respect the information disclosed is incomplete and if the additional or corrective information has not otherwise been made known to the other parties . . . ."  Fed. R. Civ. P. 26(e).  In Resolution Trust Corp. v. Gregory, No. 94-0052, 1995 U.S. Dist. LEXIS 22499 (D.N.M. Dec. 13, 1995), the Honorable Paul J. Kelly, United States Circuit Judge for the Court of Appeals for the Tenth Circuit, sitting by designation, stated: "Although Fed. R. Civ. P. 26(e) requires a party to 'supplement or correct' disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness report (indeed, the lawsuit) from the outset."  1995 U.S. Dist. LEXIS 22499, at *3.  Rule 37(c) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

## ANALYSIS

The Plaintiffs' motion seeks leave to: (i) file Welch's Declaration as supplemental to their

reply to their motion for summary judgment; (ii) disclose Evans as a potential expert witness; and (iii) file an amended expert report from Welch.  The Court may grant the Plaintiffs leave upon a showing of good cause and excusable neglect.  See Fed. R. Civ. P. 6(b).

The deadline for expert disclosures was November 7, 2008.  In compliance with that deadline, the Plaintiffs provided the County Defendants with Welch's expert report.  See Reply Exhibit 1, Welch's Report (dated Nov. 6, 2008), filed October 1, 2009 (Doc. 243-2).  In his initial report, Welch states: "The data of heading, pitch and roll angle of the helicopter is still unknown as no data has been supplied," and indicated his opinion could change based on that data.  Id. at 2. Welch supplemented his report on December 3, 2008.  See Reply Exhibit 2, Welch's Supplement (dated Dec. 3, 2008), filed October 1, 2009 (Doc. 243-3).  The supplement states: "I reserve the right to modify my opinion on the trajectory analysis once I have reviewed the GPS data to determine the heading, pitch, and roll angle of the helicopter, in addition to its precise location when it was shot, to opine more precisely on the trajectory analysis."  Id. at 3.  According to the Plaintiffs, the GPS data was requested during J. Kerns' criminal case, but was not disclosed.  See Reply at 2-3.  The Plaintiffs requested the GPS data again in this case, and it was disclosed to the Plaintiffs on November 26, 2008, less than two weeks before the expert report deadline.  The County Defendants also disclosed a data file of the laser-scan of Metro One, which the Plaintiffs did not understand until Haag's deposition on December 15, 2008, after the deadline for expert reports had passed.  The Declaration the Plaintiffs move the Court to permit completes Welch's trajectory analysis based upon Evans' analysis of the data which Haag identified for the Plaintiffs during his deposition.

In determining whether the Plaintiffs have shown excusable neglect, the Court must consider the circumstances, including: (i) the danger of prejudice to the Defendants; (ii) the length of the delay and its potential impact on the judicial proceedings; (iii) the reason for the delay, including

-11-

whether it was within the reasonable control of the Plaintiffs; and (iv) whether the Plaintiffs acted in good faith.  <u>See</u> <u>Schupper v. Edie</u>, 193 Fed. Appx. at 746 ; <u>Panis v. Mission Hills Bank, N.A.</u>, 60 F.3d at 1494.  The Court believes the danger of prejudice to the Defendants from allowing the Plaintiffs to supplement their reply to their motion for summary judgment using the Welch Deposition is minimal, or at least manageable; to the extent that there is prejudice, the Court can give the Defendants additional discovery.  In both Welch's initial report and his supplement, he asserted the opinion that the trajectory analysis of the County Defendants was in error and explained that his own analysis remained incomplete because of the lack of raw data supplied to him.  The Welch Declaration does not assert a new theory, but supplements Welch's original opinion with concrete data.  The Defendant had possession of the data Welch originally lacked, and they could have conducted an analysis with it at any time.  The Court also believes that, given that the Defendants have already filed an interlocutory appeal of the Court's September 30, 2009 Order, there is ample time for the Defendants to depose Welch and/or Evans on their calculations and conclusions before any trial.  The Court also finds compelling the Plaintiffs' explanation for the delay, and believes that the Plaintiffs acted in good faith to keep the Defendants apprised of their efforts and avoid undue surprise.  Moreover, the Court finds that the information contained within the Welch Declaration meets the description of supplemental information, which the Plaintiffs have a duty to disclose.  <u>See</u> Fed. R. Civ. P. 26(e)(stating that a party is under a duty to supplement a rule 26(a)(2)(B) expert report "if the party learns that in some material respect the information disclosed is incomplete and if the additional or corrective information has not otherwise been made known to the other parties ….").  The Court, therefore, will allow the Plaintiffs to supplement their reply to their motion for summary judgment with the Welch Declaration.

The Court also believes that the Plaintiffs have demonstrated excusable neglect regarding

why they did not disclose Evans as an expert before the November 7, 2008 deadline. Evans was hired after the Plaintiffs learned that they had a laser-scanned data file, about which they did not even know until Haag opened the file for them on his laptop, which contained the proper software, during his deposition in December 2008. The Court does not believe that the Defendants are unfairly prejudiced, both because Haag has the knowledge and ability to conduct the same analysis that Evans conducted, because the Defendants have all of the raw data, and also because there is ample time before trial, because of the pending appeal, for the Defendants to depose Evans. The Court believes the Plaintiffs have acted in good faith and that good cause has been shown that Evans may prove a necessary rebuttal witness if Welch's conclusions are attacked at trial. The Court, therefore, will permit the Plaintiffs to disclose Evans as a potential expert witness in this case.

Finally, the Court will also permit Welch to supplement his expert report with the information contained within his Declaration. This late supplement is not the sandbagging situation Judge Kelly envisioned in Resolution Trust Corp. v. Gregory, as Welch is not putting forth a new theory, but rather giving concrete data to his original theory that the County Defendants' trajectory analysis was wrong. Such supplementation also is within the scope of the duty to supplement the Plaintiffs maintain under rule 26(e). The Plaintiffs represented to the Court that they do not oppose the Court granting leave to the Defendants to depose Evans and Welch about the new trajectory information. The Court, thus, will grant the Defendants leave to depose Evans and/or Welch, if they wish to conduct those depositions. Moreover, if there is prejudice to the Defendants from this Order, the Court will be receptive to additional briefing and additional expert designations by the Defendants.

In the end, the needs of the truth-seeking process override the inconvenience this late-disclosed evidence causes. There is no sound reason for the Court, in the procedural

circumstance of this case, to exclude probative evidence on key issues because they come late in the case. The Court can mitigate or eliminate any prejudice that the timing of these disclosures cause; the Court is not convinced the case should be resolved without this evidence.

**IT IS ORDERED** that the Plaintiffs' Motion for Leave to File Supplemental Exhibit to Their Reply Brief & Motion for Leave to Disclose a New Expert Witness and Disclose an Amended Expert Report is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Marc M. Lowry
Carolyn M. ("Cammie") Nichols
Rothstein, Donatelli, Hughes, Dahlstrom,
  Schoenburg & Bienvenu, LLP
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Daniel J. Macke
Robles, Rael, & Anaya, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendants Board of Commissioners of*
      *Bernalillo County, Bernalillo County Sheriff Darren*
      *White, Bernalillo County Sheriff's Detectives Brian Lindley,*
      *and Bernalillo County Sheriff's Deputy Lawrence Koren*

Stephanie M. Griffin
  Assistant City Attorney
Albuquerque City Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Defendants Albuquerque Police*
      *Department Officers Drew Baden, Matt Thompson,*
      *Russell Carter, and Metropolitan Forensic Science*
      *Center Firearm and Tool Mark Examiner Mike Haag.*