# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JASON KERNS, ARCHIE KERNS, and
MARY ANN KERNS,

      Plaintiffs,

vs.                                                                        No. CIV 07-0771 JB/WPL

BOARD OF COMMISSIONERS OF
BERNALILLO COUNTY, BERNALILLO COUNTY
SHERIFF DARREN WHITE, in his individual and his
official capacity, BERNALILLO COUNTY SHERIFF'S
DETECTIVES BRIAN LINDLEY, RALPH GONZALES, and
JAMES HAMSTEN, in their individual capacities, BERNALILLO
COUNTY SHERIFF DEPUTIES LAWRENCE KOREN,
SEAN CONNORS, AARON WRIGHT, TIMOTHY HIX, and
RHONDA MOYA, in their individual capacities, THE CITY OF
ALBUQUERQUE, ALBUQUERQUE POLICE DEPARTMENT
OFFICERS DREW BADER, MATT THOMPSON, RUSSELL CARTER,
ROBERT JOHNSTON and JAMES MONTOYA,
in their individual capacities, METROPOLITAN FORENSIC
SCIENCE CENTER FIREARM AND TOOL MARK EXAMINER
MIKE HAAG, in his individual capacity, and JOHN DOES 1-10,
in their individual capacities,

      Defendants.

## <u>MEMORANDUM OPINION AND AMENDED ORDER</u>[1]

    **THIS MATTER** comes before the Court on Defendants Board of County

Commissioners of Bernalillo County, Brian Lindley, and Lawrence Koren's Motion to

---

[1]On March 29, 2013, the Court issued an Order stating: "The Court will . . . at a later date issue an opinion more fully detailing its rationale for this decision." Order at 2 n.1 (Doc. 321). This Memorandum Opinion and Amended Order is the promised opinion. In the Order, the Court granted the Motion to Reconsider, and dismissed Counts VIII and IX in the First Amended Complaint for Damages Caused by the Deprivation of Civil Rights and Other Tortious Conduct, filed November 26, 2007 (Doc. 5), with prejudice. This Memorandum Opinion and Amended Order grants summary judgment as to Count VIII, and dismisses the probable cause prong of the malicious-abuse-of-process claim in Count IX with prejudice. It dismisses without prejudice the procedural impropriety prong of Count IX's malicious-abuse-of-process claim.

Reconsider on the Basis of Law of the Case, filed August 28, 2012 (Doc. 309)("Motion").  The primary issues are: (i) whether New Mexico defines probable cause for state law causes of action for false detention, false arrest, false imprisonment, and malicious prosecution brought under § 41-4-12 of the New Mexico Tort Claims Act, N.M.S.A. 1978 §§ 41-4-1 to -30 ("NMTCA"), differently than federal law defines probable cause for violations of the Fourth and Fourteenth Amendment to the Constitution of the United States of America; (ii) if the standard for probable cause is not different, whether Defendants Board of County Commissioners of Bernalillo County, Brian Lindley, and Lawrence Koren ("the Moving Defendants") are now entitled to summary judgment on Plaintiff Jason Kerns' remaining state law claims in Counts VIII and IX of his First Amended Complaint for Damages Caused by the Deprivation of Civil Rights and Other Tortious Conduct, filed November 26, 2007 (Doc. 5)("First Amended Complaint"), given that the United States Court of Appeals for the Tenth Circuit has ruled that the Defendants had probable cause to arrest and detain J. Kerns, see Kerns v. Bader, 663 F.3d 1173, 1187 (10th Cir. 2011)(Gorsuch, J.), cert. denied, 133 S. Ct. 645 (2012); and (iii) whether J. Kerns properly pled a malicious-abuse-of-process claim on the basis that the Moving Defendants' actions constituted a procedural impropriety.  Because the Court concludes that the definition of probable cause is the same under state and federal law, and because the Tenth Circuit has decided the probable cause issue, the Court will grant summary judgment in favor of the Moving Defendants on J. Kerns' state law claims for false arrest, false imprisonment, and the probable cause prong of the malicious-abuse-of-process claim.  Because J. Kerns did not sufficiently allege a malicious-abuse-of-process claim on the procedural impropriety basis, the Court dismisses Count IX without prejudice.  The Court therefore dismisses Counts VIII and IX of J. Kerns' First Amended Complaint.

## FACTUAL BACKGROUND

This case involves the investigation into an August 6, 2005 shooting of a Bernalillo County Sheriff's Department helicopter.  See Memorandum Opinion and Order at 2-5, filed August 22, 2012 (Doc. 305)("Aug. 22 MOO"), on remand from 663 F.3d 1173 (10th Cir. 2011). Around August 6, 2005, at 12:00 a.m., the Bernalillo County Metro One helicopter crashed near Golf Course Road and Paradise Boulevard in Albuquerque, New Mexico.  See Aug. 22 MOO at 2-5.  Witnesses to the crash, including Kerns, reported hearing a loud sound, similar to gunfire, immediately before Metro One crashed to Albuquerque Police Officers at the scene, including Defendants Officer Drew Bader and Sergeant Robert Johnston.  See Aug. 22 MOO at 2-5. The Court concluded:

> The undisputed facts, construed in the light most favorable to the Kerns, establish that J. Kerns informed the officers that, while he was standing at the edge of his property line, he heard a pop noise that sounded "like an engine blowback or maybe a rifle report, like the sound of a gun going off," and heard rocks kick up. There was, therefore, a reason to associate the gunfire with J. Kerns' property. . . . There was a broken window, which resembled a bullet hole, and the door [to J. Kerns' house] was unlocked.  Moreover, officers were operating in circumstances where someone was skilled enough to shoot down a helicopter at night.

Aug. 22 MOO at 85 (internal citations omitted).  The Tenth Circuit also discussed the facts of the case:

> As police continued to investigate, it seemed to them that some of Mr. Kerns's statements didn't add up.  He told police that he had heard a loud clap when the helicopter went down.  But none of his neighbors reported hearing anything like this.  He told police that rocks kicked up nearby at the same time.  But the police couldn't find a rock bed anywhere near the location Mr. Kerns described.  Deputy Lindley learned that Mr. Kerns had served in the military as a helicopter mechanic and marksmanship instructor.  Deputy Lindley also learned that Mr. Kerns had been trained to hit man-sized targets up to 2100 feet away -- and could likely hit a helicopter-sized target at a much greater distance.  For his part, Mr. Kerns estimated that the helicopter had been less than 1000 feet away from his house when it was shot down.
>
> Later interactions with Mr. Kerns only made him appear more suspect in

the authorities' eyes.  In a written statement, he admitted that he had been looking at the helicopter and had been "annoyed" by it.  He bragged to Deputy Lindley that he would have been able to "make that shot" with "no problem."  He added that he had trained to take shots at even greater distances.  Deputy Lindley prodded Mr. Kerns a bit, asking him whether someone near Mr. Kerns's house would have been able to see the helicopter from that angle.  Not missing a beat, Mr. Kerns replied that he had been able to see the helicopter just fine, and the way it was backlit made it "a great target."  He even explained how the helicopter's red strobe lights gave him an indication of the helicopter's flight path.

Later, detectives attempted to follow Mr. Kerns in an unmarked car.  It wasn't long before Mr. Kerns noticed he was being tailed and began to drive over one hundred miles per hour in an admitted attempt to lose the trailing car.  As he later explained, he thought he was being followed by police and "if they're just watching now, I'm not gonna make it easy for anybody."   He also told investigators that he suffered from Post Traumatic Stress Disorder (PTSD), and that being followed by an unmarked police car had triggered a negative reaction. He declined to tell police, however, what other situations might prompt his PTSD.

Eventually, the Bernalillo County Sheriff's Department executed a warrant to search Mr. Kerns's home for weapons and ammunition.  They found plenty of both, as well as a silencer, military literature, and several high power rifles they thought capable of downing a helicopter.  One rifle in particular, a Fabrique Nationale Model 30.06 bolt-action rifle ("FN rifle"), captured their attention.  As part of the search, police also examined the trash outside Mr. Kerns's home.  There they found something else curious: a spent rifle shell wrapped in tape and buried at the bottom of the trash can.  Mr. Kerns said the shell was an old one he found while cleaning his garage.  But analysis of the tape showed that it was fresh, neither dry nor dirty.  All this suggested to police that someone had attempted to conceal the shell and had done so recently.

. . . .

Meanwhile, other investigators sought to learn more from the wreckage of the helicopter.  They evaluated the apparent trajectory of the bullet through the helicopter to determine where the bullet had come from, and they retrieved a few fragments of the bullet itself.  Though these fragments were badly mangled, a forensic expert, Michael Haag, told investigators that the bullet could have come from Mr. Kerns's FN rifle but not his other high powered rifles.  Mr. Haag also concluded that the FN rifle fired the spent cartridge retrieved from Mr. Kerns's trash.

Another investigator, Deputy Koren, was able to retrieve GPS data from the crashed helicopter.  Using this data, he estimated the direction the helicopter was facing at the time it was hit and calculated that the aircraft was about 1670 feet from Mr. Kerns's house.  Deputy Koren also combined the entry angle of the

bullet with an approximation of the helicopter's altitude at the time of the shot to determine how far away the shooter would have been from the helicopter.  Putting this information together, and performing a bit of trigonometry, he estimated the shooter had fired from a distance of about 1630 feet.

Based on all this, Deputy Lindley prepared an affidavit in support of an arrest warrant for Mr. Kerns.  In the affidavit, Deputy Lindley explained how Mr. Kerns was a former military marksmanship instructor trained to hit man-sized targets 2100 feet away.  The Deputy noted that, by Mr. Kerns's estimate, the helicopter was less than 1000 feet away at the time it went down.  He reported that Mr. Kerns had bragged he could have hit the helicopter with "no problem" and that it was "a great target."  He recounted how Mr. Kerns had made what seemed to be a questionable statement -- that he'd heard a loud noise and rocks kick up to his left, even though none of his neighbors reported hearing anything like this and no rock bed could be found in the location Mr. Kerns described.  The Deputy also wrote of Mr. Kerns's suspicious behavior, how he had raced at over one hundred miles an hour in an attempt to lose following detectives.  And he reported that a search of Mr. Kerns's home had yielded several firearms (including the FN rifle); boxes of ammunition; at least one silencer; and a spent shell casing, freshly wrapped in tape and buried in a trash can.

Deputy Lindley's affidavit also included the results of Koren and Haag's forensic work.  The affidavit explained that, based on Deputy Koren's calculations, the shooter had been about 1630 feet from the helicopter.  Deputy Lindley noted that this was within the range of the FN rifle -- and that the distance from where the helicopter was hovering to Mr. Kerns's house was approximately 1670 feet.  Finally, Deputy Lindley reported that the bullet fragment taken from the helicopter could have been fired by the FN rifle.

Kerns v. Bader, 663 F.3d at 1178-79 (internal citations omitted).  "The arrest warrant [based on Lindley's affidavit] served as the impetus for criminal charges under state law, but the charges were dropped on August 22, 2005."  Memorandum Opinion at 31, filed April 12, 2010 (Doc. 265)("April 12 MO"), rev'd in part and vacated in part by Kerns v. Bader, 663 F.3d 1173.  "On August 17, 2005, the federal grand jury indicted J. Kerns.  The only witnesses to testify before the grand jury were Haag and FBI agent Klein."  April 12 MO at 33.  Klein testified that "all of the information he testified to before the grand jury came from the Bernalillo County Sheriff's Department and the APD."  April 12 MO at 33.  As part of the federal investigation into J. Kerns, Defendant Bernalillo County Sheriff Darren White requested and received J. Kerns'

personal medical records from the Veterans Hospital in Albuquerque without J. Kerns' consent.

See April 12 MO at 24-25.

> About nine months after the indictment, however,
>
> [a] forensic expert hired by Mr. Kerns found that Mr. Haag's ballistics report was sorely mistaken--and soon Mr. Haag admitted that Mr. Kerns's FN rifle could not have been the one that shot the helicopter.  Deputy Koren's trajectory analysis came into question as well, with competing expert testimony suggesting the shooter had only been 939 feet away, and that the bullet may not have come from the direction of Mr. Kerns's home.  In light of these developments, the U.S. Attorney dismissed the charges against Mr. Kerns.

Kerns v. Bader, 663 F.3d at 1179-80.  "On May 10, 2006, the federal criminal charges against J. Kerns were dismissed by the United States Attorney because he determined, after review of the ballistics evidence, that there was insufficient evidence to proceed."  April 12 MO at 36-37.  After being in pretrial custody for nine months, J. Kerns was released.  See April 12 MO at 38.

**PROCEDURAL BACKGROUND**

J. Kerns, and Plaintiffs Archie Kerns and Mary Ann Kerns, filed their First Amended Complaint on November 26, 2007.  See First Amended Complaint ¶ 1, at 1.  The Kerns asserted fifteen claims, each against some or all of the seventeen named Defendants, and against ten unidentified John Does, stemming from the arrest and incarceration of J. Kerns.  See First Amended Complaint ¶¶ 148-256, at 19-34.  Since the First Amended Complaint's filing, the Plaintiffs have stipulated to the dismissal of all claims asserted against certain Defendants[1] and

---

[2]On February 24, 2009, the Kerns dismissed with prejudice all claims asserted against Defendants James Hamsten, Sean Connors, Timothy Hix, and Rhonda Moya.  See Stipulation of Dismissal of Defendants James Hamsten, Sean Connors, Timothy Hix, and Rhonda Moya with Prejudice, filed February 24, 2009 (Doc. 121).  On March 20, 2009, the Kerns dismissed with prejudice all claims asserted against Montoya and Johnston.  See Stipulated Dismissal of Defendants James Montoya and Robert Johnston with Prejudice, filed March 20, 2009 (Doc. 137).  The parties agreed to dismiss with prejudice all claims against Defendant Aaron Wright. See Stipulated Order of Dismissal of Aaron Wright with Prejudice, filed July 6, 2009 (Doc. 170). The Kerns also stipulated to dismissal with prejudice of all claims against Defendant Ralph

have stipulated to the dismissal of some claims against other remaining Defendants.[2]

On October 5, 2009, before the Court decided the City Defendants Drew Bader, Matthew Thompson, and Russell Carter's Motion for Summary Judgment and Memorandum in Support, Requesting Dismissal of Counts I, X, and XII of Plaintiffs' First Amended Complaint [Doc. 5], filed February 17, 2009 (Doc. 117)("Bader, Thompson & Carter MSJ"), the remaining Counts and Defendants were: (i) Count I -- illegal entry without a warrant -- asserted against Bader, Carter, and Thompson; (ii) Count II -- unlawful search and seizure -- asserted against Lindley; (iii) Count III -- unlawful search and seizure of medical information and deprivation of medical privacy contrary to the Fourth Amendment, the Fourteenth Amendment, and the Federal Privacy Act, 5 U.S.C. § 552A(b)(7) -- asserted against White; (iv) Count IV -- false arrest/false

_____

Gonzales.  See Notice of Stipulated Dismissal of Defendant Ralph Gonzales, filed July 17, 2009 (Doc. 183).

[3]The Kerns dismissed with prejudice Count XV as against Bernalillo County and White. See Notice of Stipulated Dismissal of Defendant Darren White and of the Board of Commissioners of Bernalillo County under Count XV, filed August 20, 2009 (Doc. 209).  The Kerns dismissed with prejudice the claims against Defendant City of Albuquerque asserted in Counts VII, VIII, IX, X, XI, XII, XIII, XIV, and XV.  See Notice of Stipulated Dismissal of City of Albuquerque, filed August 20, 2009 (Doc. 210).  The Kerns dismissed the claims against Haag asserted in Counts VIII, IX, X, XI, XII, XIII, XIV, and XV of the First Amended Complaint.  See Notice of Stipulated Dismissal of Mike Haag, filed August 20, 2009 (Doc. 211). The Kerns dismissed with prejudice Count XII of the First Amended Complaint asserted against Bernalillo County, Lindley, and Koren.  See Notice of Stipulated Dismissal of Bernalillo County, Brian Lindley, and Larry Koren Under Count II, filed September 4, 2009 (Doc. 229).  The Kerns dismissed with prejudice Count XIII of the First Amended Complaint asserted against Bernalillo County, Lindley, Bader, Thompson, and Carter.  See Notice of Stipulated Dismissal of Bernalillo County, Brian Lindley, Drew Bader, Matt Thompson, and Russell Carter, filed September 4, 2009 (Doc. 230).  The Kerns dismissed with prejudice Count XIV of the First Amended Complaint asserted against Bernalillo County, Lindley, and Koren.  See Notice of Stipulated Dismissal of Bernalillo County, Brian Lindley, and Larry Koren, filed September 4, 2009 (Doc. 231).  The Plaintiffs also dismissed with prejudice Bernalillo County and White as to Count VI of the First Amended Complaint, with the exception of liability concerning Count III.  See Stipulated Dismissal of Defendants Bernalillo County Board of Commissioners as to Count VI, with Prejudice, with the Exception of Municipal Liability as it Related to Count III, filed July 14, 2009 (Doc. 176)("Stipulation on Count VI").

imprisonment of J. Kerns under the Fourth Amendment -- asserted against Lindley, Koren, and Haag; (v) Count V -- malicious prosecution under the Fourth Amendment -- asserted against Lindley, Koren, and Haag; (vi) Count VI -- municipal liability against Bernalillo County for the violations White was alleged to have committed in Count III; (vii) Count VIII -- false detention/arrest/imprisonment of J. Kerns under the NMTCA -- asserted against Lindley, Koren, and Bernalillo County; (viii) Count IX -- malicious abuse of process under the NMTCA -- asserted against Lindley, Koren, and Bernalillo County; (ix) Count X -- deprivation of property rights and trespass under the NMTCA -- asserted against Lindley, Bader, Thompson, Carter, and Bernalillo County; and (x) Count XI -- deprivation of property rights and conversion under the NMTCA -- asserted against Lindley and Bernalillo County.

In its original order on the Bader, Thompson & Carter MSJ, the Court found that a "genuine issue of material fact" existed regarding whether "exigent circumstances exist to make the warrantless entry into Plaintiffs' Jason Kerns, Archie Kerns, and Mary Ann Kerns' home lawful."  Memorandum Opinion, filed October 5, 2009 (Doc. 246)("Oct. 5 MO").  Accordingly, the Court did not grant Bader, Thompson, and Carter qualified immunity and denied the Bader, Thompson & Carter MSJ.  See Oct. 5 MO at 1-2.

On March 31, 2010, the Court decided multiple motions for summary judgment from both parties.  The Court found that probable cause supported the search warrant of the Kerns' home, and granted Lindley qualified immunity and summary judgment on Count II.  See Order, filed March 31, 2010 (Doc. 264)("March 31 Order"); April 12 MO at 89-97.  The Court also determined that White violated J. Kerns' clearly established right to privacy in his personal medical records under the Fourth and Fourteenth Amendments.  It therefore declined to grant White qualified immunity on Count III and granted the Kerns summary judgment on Count III.

See March 31 Order at 2, 4; April 12 MO at 97-122.  The Court also found that White's actions established an unconstitutional policy and granted the Kerns summary judgment on Count VI. See March 31 Order at 2-4; April 12 MO at 122-24.

The Court declined to grant Haag, Lindley, and Koren qualified immunity on Counts IV and V, because the Court concluded that a reasonable jury could find that the Defendants recklessly disregarded facts which could have vitiated the probable cause supporting J. Kerns' arrest and prosecution, in violation of J. Kerns' clearly established rights.  See March 31 Order at 3, 4; April 12 MO at 124-32, 135-44.  As to the malicious-abuse-of-process claim, the Court found that genuine issues of material fact remained regarding whether probable cause supported the arrest warrant.  See March 31 Order at 3,4; April 12 MO at 132-44.  The Court, therefore, declined to grant summary judgment.  See March 31 Order at 3, 4; April 12 MO at 144-47. "[B]ecause probable cause remains in question," the Court denied summary judgment to the Moving Defendants.  April 12 MO at 3.  The Court granted Lindley and Bernalillo County summary judgment on Counts X and XI, because no evidence that Lindley trespassed or converted the Kerns' property existed, and probable cause supported Lindley's search warrant affidavit.  See March 31 Order at 3-4; April 12 MO at 147-48.  Notably for the present Motion, the Court also acknowledged: "The County Defendants are correct that a finding of probable cause would defeat the Plaintiffs' claims of false arrest and malicious abuse of process."  April 12 MO at 147.

On appeal, the Tenth Circuit vacated and remanded the Court's denial of qualified immunity to Bader, Thompson, Carter, White, and Lindley.  Judge Holloway dissented.  See Kerns v. Bader, 663 F.3d at 1190.  The Tenth Circuit addressed the claim of false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983.  The Tenth Circuit decided

that probable cause justified J. Kerns' arrest and detention:

> Finally we turn to Mr. Kerns's false arrest, false imprisonment, and malicious prosecution claims against Deputy Lindley, Deputy Koren, and Mr. Haag. Although these torts require Mr. Kerns to prove a variety of different elements, and although defendants pursue various qualified immunity arguments in their respective appeals, there is at least one piece of common ground. To prove any of his claims, Mr. Kerns acknowledges he must establish that his arrest and detention were without probable cause. And, in the defendant's view, this he cannot do because whatever mistakes, omissions, or misstatements they may have made in connection with the arrest warrant affidavit or in grand jury proceedings, there was still probable cause to arrest and detain him during the period of his prosecution. With this much we agree. . . .

Kerns v. Bader, 663 F.3d at 1187.

The Tenth Circuit thus held that the Defendants had probable cause to arrest and detain J. Kerns during the period of his prosecution. See Kerns v. Bader, 663 F.3d at 1187. Although each piece of evidence alone was insufficient to provide probable cause, "[a]ll this taken together was enough to give police substantial if not incontrovertible reason to believe that Mr. Kerns was responsible for the shooting." 663 F.3d at 1188. The Tenth Circuit excluded all allegedly false evidence and included all allegedly exculpatory information. See 663 F.3d at 1190. It then found there was no constitutional violation, because probable cause supplied the basis for J. Kerns' arrest and prosecution.

In dissent, Judge Holloway stated that the Court "reached the correct conclusion that probable cause was not established." 663 F.3d at 1203. He agreed with the majority's approach of determining whether the arrest warrant affidavit was sufficient to establish probable cause by omitting false statements that were included due to recklessness and including improperly omitted facts. See 663 F.3d at 1202-03. He argued, however, that when the proper information was included, it was not sufficient to establish probable cause. 663 F.3d at 1203.

> The arrest warrant affidavit is based on the theory that Jason Kerns shot down the helicopter from a location within a few feet of his parents' property line. There is

> simply no other reason for including the flawed analysis which estimated that the shot had been fired from about 1630 feet away, while the helicopter at the time had been about 1670 feet from the Kerns's home.  But if the affidavit had said that the helicopter had been facing away from the Kerns's home when it was hit in the front, the distance from the Kerns's home would have been irrelevant.  And if the affidavit had disclosed that the trajectory analysis had been based merely on Koren's guess as to the position of the foot pedals at the time the bullet entered the aircraft, that analysis would lack probative value as well.

663 F.3d at 1203.   Accordingly, Judge Holloway stated that he would "hold that such a hypothetical affidavit would be insufficient to establish probable cause."   663 F.3d at 1203.  Despite sharing Judge Holloway's concerns about the improperly included information, the majority stated that "enough truthful information existed in the arrest warrant and grand jury proceedings to establish probable cause."  663 F.3d at 1190.

On remand, the Court dismissed White, Lindley, Koren, and Haag on qualified immunity grounds, see Memorandum Opinion and Order at 2, filed August 22, 2012 (Doc. 306)("August 22 MOO), and granted summary judgment for Bader, Thompson, and Carter on qualified immunity grounds because they did not violate clearly established law regarding a warrantless search pursuant to the exigent circumstances exception, see August 22 MOO. One federal claim remains: Count VI -- a municipal liability claim under 42 U.S.C. § 1983 against White relating to his alleged seizure of J. Kerns' medical records.[2]  Because the Court has found for J. Kerns on liability, the trial will address only damages.  See at 2.  The remaining state law claims include: (i) Count VIII -- false detention/arrest/imprisonment under the NMTCA, and (ii) Count IX -- malicious abuse of process under the NMTCA.  See August 22 MOO at 98.

Bernalillo County, Lindley, and Koren submit their motion to reconsider on the basis of

---

[4]The Kerns and the Defendants stipulated to the dismissal of Defendants Bernalillo County and White with prejudice as to the allegations under Count VI, with the exception of the claims in "Count VI concerning the conduct alleged in Count III."  See Stipulation on Count VI at 1-2.

law of the case.  See Motion at 1.  They note that, when the Court originally denied them summary judgment, it was because the Court found that "genuine issues of fact regarding the County Defendants' intent remain," so whether probable cause existed remained unsettled. Motion at 2 (quoting March 31 Order at 3).  The Court also stated that "a finding of probable cause would defeat the Plaintiffs' claims of false arrest and malicious abuse of process."  March 31 Order at 2.  In light of the Tenth Circuit's decision that probable cause existed to arrest and detain J. Kerns, the Moving Defendants ask that the Court reconsider its previous ruling as to Counts VIII and IX.  See Motion at 3.  They contend that the lack of probable cause is an element of these remaining state claims; the existence of probable cause operates as a full defense.  See Motion at 3.  Accordingly, the Moving Defendants argue that the Court should dismiss the state law claims with prejudice. See Motion at 3.

On September 18, 2012, the Kerns responded.  See Plaintiffs' Response to Defendants Board of County Commissioners of Bernalillo County, Brian Lindley and Laurence Koren's Motion to Reconsider on the Basis of Law of the Case, filed September 18, 2012 (Doc. 314)("Response").  J. Kerns requests that the Court reject the Moving Defendants' attempt to keep a jury from considering "years of clearly established state law which has systematically interpreted Article II, Section 10 of New Mexico's constitution as providing greater protections to Jason Kerns from unreasonable searches and seizures by the County Defendants."  Response at 2.  He argues that the Court must first determine whether the probable-cause determination would come out differently under New Mexico law.  See Response at 2-3.  Moreover, he contends that New Mexico summary judgment standards are much more deferential to the non-moving party, so the Court can still grant summary judgment in federal court, while declining to do so on the Plaintiffs' state law claims.  See Response at 7-8.

On October 1, 2012, the Moving Defendants replied.  See Defendants' Reply to Motion to Reconsider, filed October 1, 2012 (Doc. 315)("Reply").   The Defendants emphasize that "there is no legal difference in the definition" of probable cause under the Fourth Amendment and New Mexico law.  Reply at 1.  According to the Moving Defendants, the Tenth Circuit's binding conclusion that probable cause existed to arrest and detain J. Kerns "is dispositive of the remaining state law claims."  Reply at 1.  The Defendants further argue that J. Kerns' malicious-abuse-of-process claim cannot go forward because "there is no evidence of an ulterior motive other than prosecution of a crime for which a law enforcement officer had probable cause, which is a lawful use of process."  Reply at 2.  Thus, the Defendants maintain that the Court should dismiss J. Kerns' remaining state law claims with prejudice.

The Court held a hearing on October 4, 2012.  The Moving Defendants argued that J. Kerns did not properly state a claim for malicious-abuse-of-process based on procedural irregularities.   See Transcript of Hearing at 17:21-25 (taken October 4, 2012)("Tr.").   They asserted that, under New Mexico law, a plaintiff may state a claim for malicious-abuse-of-process by showing either that the defendants lacked probable cause or that their behavior constituted a procedural impropriety.  Here, they argued, J. Kerns did not allege that the Moving Defendants' actions constituted a procedural impropriety.  In fact, they asserted that this is the first time that J. Kerns has asserted this basis for his malicious-abuse-of-process claim.  See Motion at 6 n.2.  Accordingly, they argued that J. Kerns did not sufficiently allege this issue in the First Amended Complaint.

In contrast, J. Kerns insisted that he raised the issue earlier.  He also contended that the Court cannot grant summary judgment in the Motion now before the Court because the Moving Defendants did not raise this issue in their earlier summary judgment motion.  Rather, J. Kerns

argued, the Moving Defendants moved for summary judgment on the malicious-abuse-of-process claim on the basis that probable cause existed -- not on the basis that there was no procedural impropriety.  <u>See</u> Tr. at 37:16-20 (Lowry).  The Court determined that the fairest way to approach the issue would be to treat the Moving Defendants' Motion as a motion to dismiss on this issue rather than a motion for summary judgment.  <u>See</u> Tr. at 58:11-20 (Court).  Allowing the parties to address the claim in a separate motion would avoid penalizing J. Kerns for not raising the issue more concretely and the Moving Defendants for not moving to dismiss at an earlier stage.  <u>See</u> Tr. at 60:1-13 (Court).  The Court stated that, if it found that J. Kerns' claim can proceed, the parties could file more briefing regarding the merits of the claim.  <u>See</u> Tr. at 59:20-25 (Court).  Accordingly, the parties agreed that the Court must determine whether J. Kerns alleged a claim on which relief can be granted under rule 12(b)(6) of the Federal Rules of Civil Procedure.

**LAW ON RECONSIDERATION OF INTERLOCUTORY ORDERS**

The Tenth Circuit has recognized that a district court has broad discretion to reconsider its interlocutory rulings before the entry of final judgment.  <u>See</u> <u>Rimbert v. Eli Lilly & Co.</u>, 647 F.3d 1247, 1251 (10th Cir. 2011)("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d 1217, 1225 (10th Cir. 2007).  That discretion extends to rulings on partial summary judgment motions.  <u>See</u> <u>Fye v. Okla. Corp. Comm'n</u>, 516 F.3d 1217, 1223-24 n.2 (10th Cir. 2008)("The District Court's partial summary judgment ruling was not a final judgment.  Thus, Ms. Fye's motion for reconsideration is considered an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.").  The Federal Rules of Civil Procedure provide that "any order . . . however designated, which adjudicates fewer than

all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b).  See Raytheon Constructors, Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir. 2003)(holding that, because of rule 54(b) of the Federal Rules of Civil Procedure, the district court was "incorrect to treat [an interlocutory] motion for reconsideration under Rule 60(b), which only applies to final orders or judgments").

## LAW ON CLAIMS BROUGHT UNDER THE NMTCA

In the April 12 MO, the Court set out the applicable state law for J. Kerns' state law claims for false arrest, false imprisonment, and malicious abuse of process against the County, Lindley, and Koren.  The parties have not contended in their briefing or at the hearing that the Court erred in its summary of the controlling state law that must be applied to the facts of this case.

The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act . . . ." NMSA 1978, § 41-4-17(A).  A governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions to governmental entities' and public employees' immunity in the NMTCA.  See Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985), rev'd on other grounds by Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986).  "Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."  Begay v. State, 104 N.M. at 487, 723 P.2d at 256 (internal quotation marks omitted).  Thus, if the court cannot find a specific waiver in the NMTCA, the court must dismiss the plaintiff's claim.  See Begay v. State, 104 N.M. at 487, 723 P.2d at 256. . . .  The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." NMSA 1978, § 41-4-29(c). . . .

**[] New Mexico Tort Claims of False Arrest and False Imprisonment.**

The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent, and with knowledge that he has no lawful authority to do so.  See Santillo v. N.M. Dep't of Pub. Safety, 143 N.M. 84, 88, 173 P.3d 6, 12 (Ct. App. 2007); Diaz v. Lockheed Elecs., 95 N.M.

28, 31-32, 618 P.2d 372, 375-76 (Ct. App. 1980).  A false arrest is merely one way of committing false imprisonment.  See Santillo v. N.M. Dep't of Pub. Safety, 143 N.M. at 88, 173 P.3d at 12 (citing 32 Am. Jur. 2d False Imprisonment § 3 (2007)); Butler ex rel. Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 245 F. Supp. 2d 1203, 1211 (D.N.M. 2002)("The torts of false arrest and false imprisonment are similar.").  "An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest."  Santillo v. N.M. Dep't of Pub. Safety, 143 N.M. at 88, 173 P.3d at 12.  See State v. Johnson, 122 N.M. 696, 701, 930 P.2d 1148, 1153 (1996)(noting that "a common-law defense to a civil . . . false imprisonment suit . . . requires . . . that the officer prove that he or she acted in good faith and with probable cause and therefore lawfully under the circumstances").  If an officer had probable cause to obtain the warrant for a plaintiff's arrest, then he acted with authority when he arrested her, and he cannot be held liable for false imprisonment, false arrest, or for malicious abuse of process based on a lack of probable cause.  See Santillo v. N.M. Dep't of Pub. Safety, 143 N.M. at 88-89, 173 P.3d at 14.

**[] New Mexico Tort Claim of Malicious Abuse of Process.**

New Mexico has combined the torts of abuse of process and malicious prosecution into a single tort: malicious abuse of process.  See Devaney v. Thriftway Marketing Corp., 124 N.M.512, 518, 953 P.2d 277, 283 (1997), abrogated on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. 150, 164 P.3d 31 (2007).  "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."  Richardson v. Rutherford, 109 N.M. 495, 501, 787 P.2d 414, 420 (1990).  The Supreme Court of New Mexico has held:

> an abuse of process arises when there has been a perversion of the court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to perform some collateral act which he legally and regularly would not be compelled to do.

Richardson v. Rutherford, 109 N.M. at 500, 787 P.2d at 419.

The Supreme Court of New Mexico recently revised the necessary elements of the tort of malicious abuse of process.  In Durham v. Guest, 145 N.M. 694, 204 P.3d 19 (2009), the Supreme Court of New Mexico held that: (i) an arbitration proceeding is a judicial proceeding for the purposes of a claim for malicious abuse of process, see 145 N.M. at 703, 204 P.3d at 28; and (ii) that the requirement that the defendant initiate judicial proceedings against the plaintiff -- which had previously been an essential element to a malicious-abuse-of-process claim -- was no longer an element, 145 N.M. at 701, 204 P.3d at 26. The tort of

malicious abuse of process under New Mexico law now has only three elements: (i) "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge;" (ii) "a primary motive in the use of process to accomplish an illegitimate end;" and (iii) damages.  Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.

In elaborating upon the first element, the Supreme Court of New Mexico commented:

> An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process. A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt.  Finally, we emphasize that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts.

Id. at 701, 204 P.3d at 26 (internal quotation marks and citations omitted).  About the general policies underlying the malicious-abuse-of-process tort, the Supreme Court said:

> When the judicial process is used for an illegitimate purpose such as harassment, extortion, or delay, the party that is subject to the abuse suffers harm, as does the judicial system in general. Thus, the malicious abuse of process tort makes the process abuser liable to the other party for the harm caused by the abuse of process.

Id. at 702, 204 P.3d at 27.  The tort of malicious abuse of process is construed narrowly to protect the right of access to the courts.  See Devaney v. Thriftway Marketing Corp., 124 N.M. at 519, 953 P.2d at 284.  "[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive."  Richardson v. Rutherford, 109 N.M. at 502, 787 P.2d at 421 ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions . . . .")(citation omitted).  "[A] malicious- abuse-of-process plaintiff attempting to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim."  Devaney v. Thriftway Marketing Corp., 124 N.M. at 522, 953 P.2d at 287.  If an officer had probable cause to obtain the warrant for the plaintiff's arrest, then he acted with authority when he arrested her, and he cannot be held liable for malicious abuse of process

> based on a lack of probable cause.  See Santillo v. N.M. Dep't of Pub. Safety, 143
> N.M. at 88-89, 173 P.3d at 14.

April 12 MO at 81-82, 85-87.  Under New Mexico law, officers have probable cause to arrest a person "when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been, or is being, committed."  State v. Duffy, 126 N.M. 132, 150, 1998-NMSC-014, ¶ 69 (internal quotation marks and citation omitted), overruled in part on other grounds by State v. Tollardo, 275 P.3d 110, 121 n.6, 2012-NMSC-008, ¶ 37.  That definition has its genesis in the Supreme Court of the United States cases Carroll v. United States, 267 U.S. 132, 162 (1925), and Brinegar v. United States, 338 U.S. 160 (1949).

> The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. . . .  Probable cause exists where the facts and circumstances within their (the officers') knowledge, and of which they had reasonably trustworthy information, (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

Brinegar v. United States, 338 U.S. at 175 (internal quotation marks and citations omitted)(parentheticals in original).  Thus, the probable-cause standard is essentially the same under state and federal law.  In the case in which a private citizen files a complaint against another person,

> [p]robable cause in the malicious abuse of process context is defined as a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury. The lack of probable cause must be manifest.  The existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law and shall be decided by the trial judge . . . if the facts and inferences therefrom are undisputed.

Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. 150, 154, 2007-NMSC-047, ¶ 13 (internal quotation marks and citations omitted).  Further, "[p]robable cause -- the reasonableness of inferences of guilt -- is to be judged by facts as they appeared at the time, not by later-discovered

- 18 -

facts." Weststar Mortg. Corp. v. Jackson, 133 N.M. 114, 122, 2003-NMSC-002, ¶ 16.

> The initial existence of probable cause for [an] ultimately unsuccessful lawsuit makes it unnecessary to address [the plaintiff's] allegations of a malicious motive. Even if we were to accept [the plaintiff's] allegations as true, our law is clear that an improper motive by itself cannot sustain a malicious abuse of process claim.

LensCrafters, Inc. v. Kehoe, 282 P.3d 758, 766, 2012-NMSC-020, ¶ 35.   Thus, under New

Mexico law, when a plaintiff challenges only the issue of probable cause and does not raise

sufficient evidence of any other procedural irregularity or impropriety, if a court determines that

probable cause existed for the underlying suit, the plaintiff cannot "establish an essential element

of his malicious abuse of process claim as a matter of law," and summary judgment should be

granted in favor of the defendant.  LensCrafters, Inc. v. Kehoe, 2012-NMSC-020, ¶ 36.

     Citing the Tenth Circuit's holdings in this case, the New Mexico Court of Appeals

recently addressed a situation factually and procedurally similar to this case, in which a plaintiff

asserts both a

> variety of § 1983 claims under the . . . Fourth . . . and Fourteenth Amendments in addition to state tort claims for false arrest, false imprisonment, and malicious abuse of process.  Although these claims required Plaintiff to prove a variety of different elements, there was at least one common element: probable cause.   *See Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶¶ 12-13, 143 N.M. 84, 173 P.3d 6 (describing probable cause as an element in state tort claims for false arrest, false imprisonment, and malicious abuse of process); *see also Kerns v. Bader*, 663 F.3d 1173 (10th Cir. 2011) (discussing probable cause in the context of § 1983 false arrest and false imprisonment claims); *Wilkins v. DeReyes*, 528 F.3d 790, 805 (10th Cir. 2008) (discussing probable cause to initiate criminal proceedings as an element of § 1983 malicious prosecution claims).  Thus, in order for Plaintiff to have prevailed on his federal and state claims for false arrest, false imprisonment, and malicious abuse of process based on probable cause, Plaintiff was required to establish that Defendants lacked probable cause for his arrest, continued confinement, or prosecution for DUI and the lane violation.

Banos v. State, 2012 WL 868876, *3 (N.M. Ct. App. Feb. 8, 2012)(unpublished).  See Dickson

v. City of Clovis, 148 N.M. 831, 837, 2010-NMCA-058, ¶ 21 (holding that, although "false

imprisonment, malicious prosecution, assault and battery, and wrongful arrest are each specified

torts listed in Section 41-4-12 and, as such, could subject Defendant Parkin to civil liability," they were properly dismissed on summary judgment because "Defendant Parkin had probable cause to make the arrest").

## LAW ON APPLICATION OF THE LAW-OF-THE-CASE DOCTRINE

The law-of-the-case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).

> The doctrine has particular relevance following a remand order issued by an appellate court. "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995). The law of the case doctrine is intended to prevent "continued re-argument of issues already decided," *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986), and to preserve scarce court resources -- to avoid "in short, Dickens's *Jarndyce v. Jarndyce* syndrome." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000).
>
> . . . .
>
> [T]hree "exceptionally narrow" grounds justify departing from the law of the case doctrine: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *McIlravy*, 204 F.3d at 1035.

Huffman v. Saul Holdings Ltd. P'ship, 262 F.3d 1128, 1132-33 (10th Cir. 2001). Although the law-of-the-case doctrine "is designed to promote finality and prevent re-litigation of previously decided issues," it "does not serve to limit a court's power." Rimbert v. Eli Lilly & Co., 647 F.3d at 1251. "The doctrine applies to issues previously decided either explicitly or by necessary implication." Copart, Inc. v. Admin. Review Bd., 495 F.3d 1197, 1201 (10th Cir. 2007). See Employers' Mut. Cas. Co. v. Bartile Roofs, Inc., 478 F. App'x 493, 498 (10th Cir. April 19, 2012)(holding that, "to the extent that [the defendant] attempts to circumvent our prior legal

conclusion concerning what constitutes an 'accident' under the [relevant insurance] policies, the law of the case doctrine bars the attempt").

The Court of Appeals for the Tenth Circuit has long held that there are

three grounds under the "law of the case" doctrine by which we might conclude an issue was implicitly resolved in a prior appeal, as follows: (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated.

Copart, Inc. v. Admin. Review Bd., 495 F.3d at 1201-02.  This Court has stated that "[l]aw of the case is a doctrine that binds the trial court after an appeal."  Lane v. Page, 727 F. Supp. 2d 1214, 1230 (D.N.M. 2010)(Browning, J.)(citation omitted).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss.");  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable

to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247 (citations omitted)(quoting Bell Atl. Corp. v. Twombly,

550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a

complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice, see Anderson Living Trust v. WPX Energy Prod., LLC, No. CIV 12-0040 JB/KBM, 2014 WL 2750652, at *17, *37-39 (D.N.M. May 16, 2014)(Browning, J.).

## ANALYSIS

The Tenth Circuit concluded as a matter of law that Lindley and Koren are entitled to qualified immunity on J. Kerns' false-arrest, false-imprisonment, and malicious-prosecution claims brought under § 1983 because there was probable cause to arrest, imprison, and prosecute him.  The Court noted in its April 12 MO that a finding of probable cause would defeat the Plaintiffs' state law claims for false arrest, false imprisonment, and malicious abuse of process.  Because the probable-cause standard under federal and state law is the same, and the Tenth Circuit has already determined that probable cause existed, the Tenth Circuit's reasoning applies and the Court concludes that the Moving Defendants had probable cause to arrest, detain, and prosecute J. Kerns.  The Defendants, therefore, are entitled to summary judgment on Count VIII and the probable-cause prong of the malicious-abuse-of-process claim in Count IX. Additionally, because J. Kerns did not sufficiently allege the procedural impropriety prong of the

malicious-abuse-of-process claim in Count IX, the Court dismisses this claim without prejudice.

**I.      THE TENTH CIRCUIT HAS ALREADY CONCLUDED THAT THE MOVING DEFENDANTS HAD PROBABLE CAUSE UNDER THE FOURTH AMENDMENT, AND THE PROBABLE-CAUSE STANDARD IS THE SAME UNDER FEDERAL AND STATE LAW.**

In determining that the Moving Defendants were entitled to qualified immunity on J. Kerns' claims for violation of his Fourth and Fourteenth Amendment rights brought under 42 U.S.C. § 1983 on the theories of false arrest, false imprisonment, and malicious prosecution, the Tenth Circuit concluded that "authorities have probable cause to arrest a trained marksman who makes suspicious statements in the wake of a shooting, who leads officers on a high speed chase, and who has a recently concealed rifle shell casing lying at the bottom of his trash can[.]"  Kerns v. Bader, 663 F.3d at 1177.  The Tenth Circuit explained that,

> [t]o prove any of his claims, Mr. Kerns acknowledges he must establish that his arrest and detention were without probable cause.  And, in the defendants' view, this he cannot do because whatever mistakes, omissions, or misstatements they may have made in connection with the arrest warrant affidavit or in grand jury proceedings, there was still probable cause to arrest and detain him during the period of his prosecution.

663 F.3d at 1187.  The Tenth Circuit assessed both "what *was* included in the affidavit," as well as any omitted facts that could "have ruled him out as the shooter."  663 F.3d at 1188 (italics in original).  It held that "[a]ll this taken together was enough to give police substantial if not incontrovertible reason to believe that Mr. Kerns was responsible for the shooting."  663 F.3d at 1188 (italics in original).

The Tenth Circuit rejected J. Kerns' arguments that, had the defendants disclosed the helicopter's true location and direction, it would have been clear that the shot could not have come from his back yard.  See 663 F.3d at 1189.  The Tenth Circuit explained that,

> none of this is necessarily exculpatory.  It only does Mr. Kerns any good if he can show he was in his backyard at the time of the shooting.  But the only evidence of

> that comes from Mr. Kerns's self-interested statements.  And by the time of his arrest Mr. Kerns had already proved himself unreliable through a variety of misleading and contradictory statements and actions-statements and actions outlined in the arrest warrant affidavit and grand jury testimony.  Including the omitted information about the track of the helicopter, thus, would have done nothing to negate the probable cause that already existed.

663 F.3d at 1189.  In other words, according to the Tenth Circuit, in light of J. Kerns' other statements that proved to be unreliable, the officers were not required to believe J. Kerns' uncorroborated statement that he was in his back yard instead of in another nearby location from which the shots actually fired.  Further, at the time Lindley and Koren were conducting their investigations, the helicopter pilot told them that the helicopter "was facing west when he heard the loud noise and the helicopter began to shake," even though the Kerns contend that the GPS data indicated that the helicopter "was facing in a north-easterly direction, away from the Plaintiffs' residence" at the time it went down.  April 12 MO at 4 n.2.  Although a witness testified in 2009 that he thought the helicopter was facing south when it was shot down, he did not say that in his 2005 statement, and the Court has already ruled that it "will not accept that Lindley recklessly omitted directional information learned from Smith's eyewitness account." April 12 MO at 92.  Moreover, it appears that Smith's account contradicts J. Kerns' conclusion that the helicopter must have been facing northeast at the time it was shot based upon the GPS data.  In sum, because the officers were not required to believe J. Kerns' statement, the Tenth Circuit concluded that the Moving Defendants had probable cause.

Despite the Tenth Circuit's conclusion, J. Kerns contends that his state law claims can nonetheless go forward because federal and state standards for probable cause are "dramatically" different.  Response at 2.  He asserts that DeVaney v. Thriftway Marketing Corp. demonstrates that "state law, unlike federal law, requires that a probable cause determination be made after a reasonable pre-filing investigation."  Response at 2 (quoting DeVaney v. Thriftway Marketing

Corp., 1998-NMSC-001).   Contrary to J. Kerns' assertions, DeVaney v. Thriftway Marketing

Corp. does not suggest that the state law probable-cause standard is more stringent than the

federal standard.   In DeVaney v. Thriftway Marketing Corp., Thriftway Marketing -- a business

as opposed to a police officer -- filed a civil complaint against the plaintiff individual for

defamation.   See 1998-NMSC-001, ¶ 1.   In response, the plaintiff filed the malicious-abuse-of-

process claim because he alleged that Thriftway Marketing had no probable cause to file the

defamation action.   See 1998-NMSC-001, ¶ 1.   There was no arrest affidavit, no police

investigation, and no arrest warrant or criminal charges based on that affidavit.   See 1998-

NMSC-001, ¶¶ 1-5.   Thus, in that circumstance, the New Mexico court required the plaintiff to

have engaged in a reasonable investigation before filing suit as part of the probable-cause

analysis -- just like a police officer does before filing charges.   DeVaney v. Thriftway Marketing

Corp. in no way indicates that, under New Mexico law, plaintiffs must perform a more thorough

investigation to have probable cause than they would under federal law.

A state or federal probable-cause analysis concerning the police officers' actions imposes

similar requirements on police officers: the officer must either witness an individual commit a

crime or have knowledge of "facts and circumstances," and "reasonably trustworthy information

. . . to warrant a man of reasonable caution in the belief that an offense has been or is being

committed."   Brinegar v. United States, 338 U.S. at 175; Romero v. Fay, 45 F.3d 1472, 1476-77

(10th Cir. 1995)("[T]he probable cause standard of the Fourth Amendment requires officers to

reasonably interview witnesses readily available at the scene, investigate basic evidence, or

otherwise inquire if a crime has been committed at all before invoking the power of warrantless

arrest and detention.").   The probable-cause standard presupposes, therefore, that if the officer

has not witnessed a crime, he has conducted enough investigation to deduce that a crime has

been committed.  See Tanner v. San Juan County Sheriff's Office, 864 F. Supp. 2d 1090, 1123 (D.N.M. 2012)(Browning, J.)("Likewise, '[p]robable cause is measured against an objective standard of reasonableness and may rest on the collective knowledge of all officers involved in an investigation rather than solely on the knowledge of the officer who made the arrest.'")(quoting United States v. Chavez, 660 F.3d 1215, 1224 (10th Cir. 2011)).  Thus, both state and federal law impose similar requirements for an officer to have probable cause.

Here, Lindley and his fellow officers conducted an investigation before Lindley submitted the arrest warrant affidavit.  J. Kerns' contention that "state law requires that any probable cause determination be reasonable, whereas the federal standard does not," see Response at 14, is without merit.  Both federal and state law impose similar requirements for an officer to conclude he has probable  cause.  See Tanner v. San Juan County Sheriff's Office, 864 F. Supp. 2d at 1123.  Moreover, it is clear under New Mexico law that an absence of probable cause is an essential element that a plaintiff must establish to prevail on state law claims for false arrest, false imprisonment, and malicious abuse of process.  See LensCrafters, Inc. v. Kehoe, 2012-NMSC-020, ¶ 36 (holding that, if a court determines that probable cause existed for the underlying suit, the plaintiff cannot "establish an essential element of his malicious abuse of process claim as a matter of law," and summary judgment should be granted in favor of the defendant);  Devaney v. Thriftway Marketing Corp., 1998-NMSC-001, ¶ 27 ("[A] malicious-abuse-of-process plaintiff attempting to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim.");  Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159, ¶ 12 ("The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent, and with knowledge that he has no lawful

authority to do so."); Banos v. State,  2012 WL 868876, *3 ("Plaintiff was required to establish that Defendants lacked probable cause for his arrest, continued confinement, or prosecution."). In conclusion, probable-cause standards are the same under federal and state law, and the Tenth Circuit has already concluded that the Defendants had probable cause under federal law.

## II.   THE MOVING DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON J. KERNS' CLAIMS FOR FALSE ARREST AND FALSE IMPRISONMENT, AND THE PROBABLE CAUSE PRONG OF J. KERNS' MALICIOUS-ABUSE-OF-PROCESS CLAIM, BECAUSE THEY HAD PROBABLE CAUSE.

The Moving Defendants contend that they are entitled to summary judgment under the law-of-the-case doctrine because the Tenth Circuit concluded that probable cause justified J. Kerns' arrest and continuing detention, and their actions were therefore lawful.  See Motion at 5-6.  "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal."  Rohrbaugh v. Celotex Corp., 53 F.3d at 1183.  The Tenth Circuit decided that probable cause existed to arrest and detain J. Kerns regarding his claims for false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment.  It did not determine that probable cause existed under state law.  Thus, it did not address the precise issue now before the Court and the law-of-the-case doctrine does not apply. See Rishell v. Jane Phillips Episcopal Memorial Medical Ctr., 94 F.3d 1407, 1410 (10th Cir. 1996).  The Tenth Circuit has held that the law-of-the-case doctrine does not apply "unless an appellate decision has issued on the merits of the claim sought to be precluded."  Rishell v. Jane Phillips Episcopal Memorial Medical Ctr., 94 F.3d at 1410.  Because the Tenth Circuit did not decide whether probable cause exists under J. Kerns' state-law claims, the law-of-the-case doctrine does not dictate the outcome here.  See Tr. at 17:21-25 (agreeing that the law-of-the-case doctrine does not control and that the Court must determine whether the Defendants had

- 29 -

probable cause under the Kerns' state law claims)(Macke).  Regardless, because the federal and state probable cause standards are the same, the Court determines that the Tenth Circuit's analysis requires the same conclusion under state law.  For the reasons described in the previous section, the Court adopts the Tenth Circuit's reasoning and concludes that the Moving Defendants had probable cause under state law.

J. Kerns contends that the probable cause determination on his state law claims will be different than the Tenth Circuit's determination regarding his federal claims because state law probable-cause standards are different than federal standards.  See Response at 10.  He does not, however, provide relevant legal support that state probable cause standards would lead to a different conclusion.  Instead, he focuses on other standards that he maintains are different between federal and state law.  First, he contends that there are "distinctions" between federal qualified-immunity analysis and state summary-judgment standards, with the federal qualified-immunity analysis being more "protective of and deferential to law enforcement officers." Response at 3.  J. Kerns contends that, in contrast, under the NMTCA, officers have no immunity from liability for the torts of false arrest, false imprisonment, and malicious abuse of process.  See Response at 4-5.  While both statements may be true, that fact does not mean that a plaintiff need not establish an essential element -- lack of probable cause -- in supporting state law claims for the torts of false arrest, false imprisonment, and malicious abuse of process.  Nor does the availability of qualified immunity alter the state law probable cause standard.  See Dickson v. City of Clovis, 148 N.M. at 837, 2010-NMCA-058, ¶ 21 (holding that, although "false imprisonment, malicious prosecution, assault and battery, and wrongful arrest are each specified torts listed in Section 41-4-12 and, as such, could subject Defendant Parkin to civil liability," they were properly dismissed on summary judgment because "Defendant Parkin had

probable cause to make the arrest"); <u>Banos v. State</u>,  2012 WL 868876, at *3 ("[I]n order for

Plaintiff to have prevailed on his federal and state claims for false arrest, false imprisonment, and

malicious abuse of process based on probable cause, Plaintiff was required to establish that

Defendants lacked probable cause for his arrest, continued confinement, or prosecution.").

 Citing <u>Bober v. New Mexico State Fair</u>, 111 N.M. 644, 1991-NMSC-031, and <u>Schear v.</u>

<u>Board of County Commissioners</u>, 101 N.M. 671, 1984-NMSC-079, J. Kerns suggests that, under

the NMTCA, the causes of action for false arrest, false imprisonment, and malicious abuse of

process are actually "negligence based claim[s] where the plaintiff must show that a defendant

negligently caused the infliction of one of the predicate torts found within Section 41-4-12."

Response at 5.  Because "[n]egligence is generally a question for the jury," J. Kerns argues that

the Court must allow the jury to decide whether the Defendants negligently failed to investigate.

Response at 5.  New Mexico courts, however, have never held that simple negligence can give

rise to liability for the intentional torts in § 41-4-12 of the NMTCA.  Specifically, in <u>Bober v.</u>

<u>New Mexico State Fair</u>, the New Mexico Supreme Court stated that, although the "Court has

held that a law enforcement officer or agency may be held liable under Section 41-4-12 for

negligently causing infliction of one of the predicate [intentional] torts" in Section 41-4-12 of the

NMTCA, "no case has held that simple negligence in the performance of a law enforcement

officer's duty amounts to commission of one of the torts listed in the section." <u>Bober v. N.M.</u>

<u>State Fair</u>, 1991-NMSC-031, ¶ 32.  The Supreme Court of New Mexico noted:

> In the absence of any allegations giving rise to a duty on the part of the State
> Police to exercise ordinary care for Bober's safety, and because the State Police's
> immunity from liability has not been waived by Section 41-4-12, we conclude
> that the trial court properly awarded summary judgment to the State Police.

<u>Bober v. N.M. State Fair</u>, 1991-NMSC-031, ¶ 33.  Thus, the nature of J. Kerns' NMTCA claims

does not require the Court to deny the Defendants summary judgment.

The Court of Appeals of New Mexico has also rejected J. Kerns' assertion that his actions for intentional torts under § 41-4-12 of the NMTCA sound in negligence.  In <u>Lessen v. City of Albuquerque</u>, 144 N.M. 314, 2008-NMCA-085, the plaintiff, like J. Kerns, contended that, even though her claims for due-process violations could not prevail under the standards for § 1983 claims, the NMTCA "does not require proof of anything more than negligence in order for immunity to be waived."  <u>Lessen v. City of Albuquerque</u>, 2008-NMCA-085, ¶ 36.  The Court of Appeals of New Mexico noted that

> the "acts enumerated" in Section 41-4-12 are all intentional torts.  Our Supreme Court clarified in *Bober v. New Mexico State Fair*, 111 N.M. 644, 654, 808 P.2d 614, 624 (1991),  that "no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in [Section 41-4-12]."  Instead, the cases prior to *Bober* that were brought under Section 41-4-12 "all involved assaults by third parties on the respective victims, caused by the negligent inaction of law enforcement officers." *Id*.

> Thus, at least with respect to the torts enumerated in Section 41-4-12, allegations of negligence are appropriate only to the extent that a law enforcement officer's negligence is alleged to have caused a third party to commit one of the specified intentional torts.

<u>Lessen v. City of Albuquerque</u>, 2008-NMCA-085, ¶¶ 39-40.  <u>See</u> <u>Dickson v. City of Clovis</u>, 148 N.M. at 836, 2010-NMCA-058, ¶ 18 (citing <u>Lessen v. City of Albuquerque</u> and holding that "it is well established in New Mexico that Section 41-4-12 immunity is not waived in an action for negligence standing alone").  J. Kerns does not allege that Lindley's or Koren's statements in the arrest warrant negligently resulted in a third party committing an enumerated intentional tort listed in § 41-4-12.  <u>See</u> <u>Schear v. Board of County Commissioners</u>, therefore, does not apply, and <u>Bober v. N.M. State Fair</u> and <u>Lessen v. City of Albuquerque</u> reject J. Kerns' contention that the Defendants' alleged negligence requires the Court to allow a jury to hear the case.

J. Kerns next contends that "summary judgment [is] unwarranted for the state law claims, even though it [may have been] appropriate for the § 1983 claims," because New Mexico has a

"strong preference for cases to be decided on their merits by juries" and the Supreme Court of New Mexico has "discredited the trend in federal case law to use heightened evidentiary burdens for non-moving parties to increasingly grant motions for summary judgments."  Response at 6-7. As the Defendants point out, however, the Kerns chose to file their suit in the federal court, where the Federal Rules of Civil Procedure apply to the resolution of all claims.   See Jones v. United Parcel Serv., Inc., 674 F.3d 1187, 1195 (10th Cir. 2012).  The Tenth Circuit has stated that, in diversity cases in which the claims all are state law claims, "the substantive law of the forum state governs the analysis of the underlying claims," but "federal law controls the ultimate, procedural question whether [judgment as a matter of law] is appropriate."   Jones v. United Parcel Serv., Inc., 674 F.3d at 1195 (brackets in original)(quoting Wagner v. Live Nation Motor Sports, Inc., 586 F.3d 1237, 1244 (10th Cir. 2009)).  If the Kerns had desired a theoretically diminished burden or benefit in responding to summary-judgment motions on their federal or state law claims, they could have filed their case in state court.

Further, the Supreme Court of New Mexico has made it clear that it does "not intend to imply that summary judgment is never appropriate" and notes that, as under the Federal Rules of Civil Procedure, "summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment" and the non-movant has failed "to demonstrate the existence of specific evidentiary facts which would require trial on the merits."  Romero v. Philip Morris Inc., 148 N.M. 713, 721, 2010-NMSC-035, ¶ 10.  Thus, contrary to J. Kerns' contention, the Tenth Circuit's probable-cause determination was not "resolved in a manner that is diametrically opposed to the summary judgment standards used for state law claims."  Response at 8.  Indeed, the Supreme Court of New Mexico has affirmed summary judgment in favor of defendants on claims brought under § 41-4-12 of the NMTCA

- 33 -

because the plaintiff could not establish the element of absence of probable cause.  See LensCrafters, Inc. v. Kehoe, 2012-NMSC-020, ¶ 35; Romero v. Sanchez, 1995-NMSC-028, ¶¶ 14-15.

J. Kerns next criticizes the Tenth Circuit's analysis in its opinion holding that J. Kerns' federal claims against Lindley and Koren had to be dismissed because the officers had probable cause to arrest and prosecute him.  The Tenth Circuit's conclusion on this issue, of course, binds the Court with regard to whether there was probable cause under federal standards.  As stated above, the Court also concludes that the Tenth Circuit's reasoning applies to whether the Defendants had probable cause under state standards.  Nonetheless, J. Kerns contends that "the Tenth Circuit ruled against Jason Kerns on the probable cause question because *Jason Kerns* could not *prove* this *undisputed* fact:" that he "was standing in his back yard on August 6, 2005 when the helicopter was shot down."  Response at 8 (italics in original).

That is not, however, why the Tenth Circuit concluded that Lindley and Koren had probable cause to arrest J. Kerns.  First, contrary to J. Kerns' assertions to the contrary, the Defendants have never conceded at a deposition or in their briefing that J. Kerns was in his backyard at the time the helicopter was shot down.  Rather, Lindley did not dispute that J. Kerns told the police he was standing in his back yard.  In fact, as the Tenth Circuit points out, in his arrest warrant affidavit, Lindley apprised state officials of Kerns' statement regarding his location, and then described why officers believed that J. Kerns was not telling the truth either about where he was standing when the shot was fired, or about the direction from which he said he heard the popping sound.  See Kerns v. Bader, 663 F.3d 1177; Arrest Warrant Affidavit of Detective Brian Lindley at 1-3 (dated August 15, 2005), filed July 17, 2009 (Doc. 182-4)("Lindley Affidavit")(noting that, although J. Kerns stated that he was standing in his backyard

and that he heard: (i) a loud pop that sounded no farther than fifty yards away; and (ii) rocks fly

up "directly north" of where he was standing, the officers discovered that no rock or gravel areas

existed that could have produced the sound he described and none of J. Kerns' neighbors heard

the shot).  As the Court has previously noted, it was J. Kerns' statement about his location and

how close the shooter must have been to him when he fired the shot that connected the shooting

to J. Kerns' location and gave rise to probable cause to search J. Kerns' residence.

In considering J. Kerns' argument that Lindley improperly omitted from his affidavit J.

Kerns' statement that he was in his backyard at the time the helicopter was shot down and the

GPS information regarding the helicopter's directional position, the Tenth Circuit applied the

standard that,

> where true information has been allegedly and unlawfully *omitted* from an
> affidavit or grand jury proceeding, the existence of probable cause is determined
> by examining the affidavit [or proceedings] as if the omitted information had been
> included and inquiring if the affidavit [or proceedings] would <u>still</u> have given rise
> to probable cause.
>
> . . . .
>
> Evaluated using this technique -- striking the allegedly false information
> and inserting the allegedly truthful but omitted information -- and in light of this
> substantive standard -- requiring more than a bare suspicion but not proof beyond
> a reasonable doubt or even a preponderance -- the affidavit and grand jury
> testimony still featured sufficient evidence to warrant Mr. Kerns's arrest and
> detention.

<u>Kerns v. Bader</u>, 663 F.3d at 1188 (italics in original, underlining added).  Thus, the Tenth Circuit

did not find probable cause simply because J. Kerns could not prove that he was in his backyard,

nor did it make a credibility determination.  For the same reasons as the Tenth Circuit, the Court

concludes that the Moving Defendants had probable cause.

As noted, the related issue the Tenth Circuit was analyzing when it discussed J. Kerns'

statement about where he was standing was whether J. Kerns' uncorroborated statement was

actually exculpatory evidence indicating that he could not have been the shooter.  See 663 F.3d at 1189 ("Mr. Kerns asks us to focus on facts that the affidavit and grand jury testimony omitted, insisting that including those facts would have ruled him out as the shooter.").  The Tenth Circuit stated that, even if the Moving Defendants had disclosed the helicopter's true location and direction, indicating that the shot did not come from J. Kerns' back yard, "none of this is necessarily exculpatory."  663 F.3d at 1189.  According to the Tenth Circuit, although he stated that he had been in his back yard, based on his statement that the shot was so close it made his ears ring, J. Kerns could just as easily have been in the area where the other witnesses said they also heard the shot.  See 663 F.3d at 1189.  Thus, according to the Tenth Circuit, including this omitted information would not alter the determination that the officers had probable cause.  The Court therefore rejects J. Kerns' contention that, if the Defendants fail to show that J. Kerns was "standing somewhere other than his back yard," they lacked probable cause.  Response at 8-9.

Under New Mexico substantive law, "for Plaintiff to prevail on [state law] claims of false imprisonment, false arrest, and malicious abuse of process based on probable cause, [the plaintiff] must show that a factual question exists as to whether [the arresting officer] had probable cause" to believe that a crime was being committed.  Santillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-159, ¶ 12.  See Banos v. State, 2012 WL 868876, *3 (noting that "state tort claims for false arrest, false imprisonment, and malicious abuse of process . . . required Plaintiff to prove a variety of different elements, [and] there was at least one common element: probable cause").  The Tenth Circuit has held that there is no support for a "broad proposition that a police officer who interviews witnesses and concludes probable cause exists to arrest violates the Fourth Amendment by failing to investigate the defendant's alleged alibi witnesses."  Romero v. Fay, 45 F.3d at 1476.  Thus, a lack of probable cause is an essential element of each of J. Kerns'

state law claims, and his failure to show a material fact in dispute regarding probable cause allows the Court to grant summary judgment in the Defendants' favor.

J. Kerns nevertheless argues that the New Mexico state constitution affords him more protection against unlawful seizures than does the Fourth Amendment of the United States Constitution, and contends that whether the Moving Defendants are entitled to summary judgment on his state law claims must be determined using a "reasonableness" standard. Response at 3, 11-12.  The Moving Defendants correctly note that "Plaintiff has no state constitutional claim pending, so there is no need to address whether or to what extent the State Constitution affords broader protection than the Fourth Amendment."  Reply at 7.  While New Mexico courts may analyze constitutional claims using a reasonableness standard, the standard by which New Mexico courts determine whether an arrest, detention, and prosecution are reasonable is by asking whether the officer had probable cause to arrest, detain, and accuse the individual.  See LensCrafters, Inc. v. Kehoe, 2012-NMSC-020, ¶ 36 (holding that, if a court determines that probable cause exists for the underlying suit, the plaintiff cannot "establish an essential element of his malicious abuse of process claim as a matter of law" and summary judgment should be granted in the defendant's favor).  Again, the "reasonableness" inquiry is built into the probable-cause analysis.  See Brinegar v. United States, 338 U.S. 160, 175 (1949)("The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."); Fleetwood Retail Corp. of N.M. v. LeDoux, 154, 2007-NMSC-047, ¶ 13 ("Probable cause in the malicious abuse of process context is defined as a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury."); Romero v. Fay, 45 F.3d at 1476-77 ("The probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily

available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."); Tanner v. San Juan County Sheriff's Office, 864 F. Supp. 2d at 1123 ("Likewise, '[p]robable cause is measured against an objective standard of reasonableness and may rest on the collective knowledge of all officers involved in an investigation rather than solely on the knowledge of the officer who made the arrest.'")(quoting United States v. Chavez, 660 F.3d at 1224).  The Court therefore rejects J. Kerns' contrary suggestion that it must examine whether the Moving Defendants' actions were unlawful using some test for reasonableness other than whether the officers had probable cause to arrest, detain, and prosecute him.

Finally, J. Kerns questions whether his arrest was reasonable, "given [] the Defendants' intentional disregard of the exculpatory facts concerning Jason Kerns' location, and their affirmative nondisclosure of such information throughout the criminal case (*i.e.*, the GPS data, the direction the helicopter was facing, and the laser data concerning the trajectory analysis)." Response at 14.  As the Tenth Circuit has held, J. Kerns' uncorroborated statement about where he was located when the helicopter was shot down was not "necessarily exculpatory," and Lindley "recounted how Mr. Kerns had made what seemed to be a questionable statement -- that he'd heard a loud noise and rocks kick up to his left, even though none of his neighbors reported hearing anything like this and no rock bed could be found in the location Mr. Kerns described." Kerns v. Bader, 663 F.3d at 1178, 1189.  Further, the Defendants were not aware that Koren's trajectory computations, on which Lindley relied in part to prepare his arrest-warrant affidavit, were arguably incorrect until J. Kerns' expert later suggested that Koren had failed to determine the correct angle of the bullet's trajectory.  As the Supreme Court of New Mexico notes, "[p]robable cause -- the reasonableness of inferences of guilt -- is to be judged by facts as they

appeared at the time, not by later-discovered facts." Weststar Mortg. Corp. v. Jackson, 133 N.M. at 122, 61 P.3d at 831.  The Court, therefore, agrees with the Tenth Circuit's reasoning regarding federal probable cause and concludes that the Moving Defendants had probable cause here.

The Tenth Circuit routinely affirms the dismissal of civil-rights claims brought under the NMTCA based on qualified immunity when probable cause exists to arrest the plaintiff.  See Motion at 8 (citing Painter v. City of Albuquerque, 383 F. App'x 795, 801 n. 2 (10th Cir. 2010). For example, in Scull v. New Mexico, 236 F.3d 588 (10th Cir. 2000), the Tenth Circuit affirmed summary judgment granted in favor of officers on false-imprisonment claims brought under both federal civil-rights statutes and the NMTCA because the plaintiff could not show that the defendant officers lacked probable cause.  See 236 F.3d at 599 (citing Diaz v. Lockheed Electronics, 95 N.M. 28, 1980-NMCA-140).  The Tenth Circuit held that the plaintiff could not satisfy a required element of a malicious-abuse-of-process claim -- probable cause -- because the officers "believed they had the lawful authority to imprison [the plaintiff] based on the NCIC hit." Scull v. New Mexico, 236 F.3d at 599.  Similarly, the Supreme Court of New Mexico has affirmed the trial court's grant of summary judgment to defendant police officers on § 1983 and NMTCA claims when the trial court found that the officer had probable cause -- "a reasonable belief based upon the available facts that his actions were necessary to carry out his statutory duties as a law enforcement officer . . . ." Romero v. Sanchez, 119 N.M. 690, 694, 1995-NMSC-028, ¶ 13 (1995).  Because, therefore, the Moving Defendants had probable cause, they are entitled to summary judgment on J. Kerns' state law claims for false arrest, false imprisonment, and the probable cause prong of J. Kerns' malicious-abuse-of-process claim.

### III.   J. KERNS FAILS TO STATE A CLAIM FOR MALICIOUS-ABUSE-OF-PROCESS BASED ON THE MOVING DEFENDANTS' USE OF <u>PROCEDURAL IRREGULARITIES OR IMPROPRIETIES.</u>

A plaintiff may establish the elements for a malicious-abuse-of-process claim by showing either the lack of probable cause, or that the defendant engaged in activities from which a jury may infer an "irregularity or impropriety suggesting extortion, delay, or harassment." <u>Durham v. Guest</u>, 2009-NMSC-007, ¶ 29.   J. Kerns contends that his malicious-abuse-of-process claim should stand, even if the Moving Defendants had probable cause, because they "withheld material exculpatory information from the Court, the prosecutors, and [J. Kerns'] criminal attorneys."  Response at 16.  J. Kerns asserts that withholding this evidence is a "procedural impropriety" that supports his claim.  Response at 16.[3]

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  <u>Ford v. West</u>, 222 F.3d 767, 772 (10th Cir. 2000).

> The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages.  <u>See Durham v. Guest</u>, 145 N.M. at 701; 204 P.3d at 26.  An improper use of process may be shown by: (i) filing a complaint without probable cause; or (ii) an irregularity or impropriety suggesting extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process.  <u>See Durham v. Guest</u>, 145 N.M. at 701; 204 P.3d at 26.

<u>Walker v. THI of New Mexico at Hobbs Ctr.</u>, 803 F. Supp. 2d 1287, 1330 (D.N.M. 2011)(Browning, J.).  At the outset, the Court notes that, if J. Kerns properly asserted the cause

---

[5]As stated in the procedural section, the Court will address the procedural impropriety prong of J. Kerns' malicious-abuse-of-process claim as if the Moving Defendants had filed a motion to dismiss rather than a motion for summary judgment.

of action in the First Amended Complaint, he could state a claim on which the Court could grant relief, even if the Defendants had probable cause to initiate a criminal prosecution against him. See Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, ¶ 22. The cause of action requires the plaintiff to show an improper use of process either by filing a complaint without probable cause or by engaging in a procedural impropriety.  See Durham v. Guest, 2009-NMSC-007, ¶ 29.  Were the Court to conclude that a plaintiff could never establish a malicious-abuse-of-process claim without showing lack of probable cause, as the Moving Defendants suggest, it would fully negate the second prong.  It would also disregard established New Mexico law stating that a plaintiff may prove an improper use of process by showing either lack of probable cause or a procedural impropriety.  The Supreme Court of New Mexico has stated that there may be cases in which the defendants had probable cause to file a criminal prosecution, but performed some other impropriety.  For example, in Fleetwood Retail Corp. of N.M. v. LeDoux, the Supreme Court of New Mexico recognized that "even in meritorious cases the legal process may be abused."  2007-NMSC-047, ¶ 22 (quoting Richardson v. Rutherford, 109 N.M. 495, 502, 1990-NMSC-015, ¶ 25).   Thus, if sufficiently alleged, J. Kerns could pursue a claim for malicious-abuse-of-process, even though the Moving Defendants had probable cause.  J. Kerns did not, however, sufficiently allege this claim.

In Fleetwood Retail Corp. of N.M. v. LeDoux, the Supreme Court of New Mexico considered whether a plaintiff adequately alleged a malicious-abuse-of-process counterclaim in her answer:

> LeDoux did not simply allege that Fleetwood initiated the federal and state suits without probable cause; she also alleged that it *maintained* those suits and refused to consider evidence of her innocence without a reasonable belief of the factual allegations against her.  There was evidence that Fleetwood cancelled a meeting with LeDoux to discuss her role in the schemes of Fleetwood's employees, and refused to reschedule unless LeDoux had information about the other defendants.

- 41 -

With a fuller exposition of the facts, a jury could have found that Fleetwood's actions were similar to an attempt to extort information out of LeDoux. Fleetwood did not dismiss its suit in federal court even after it did not directly respond to the part of LeDoux's letter alleging that the federal suit was legally and factually insufficient.  It was only after LeDoux had expended considerable resources on a motion to dismiss that Fleetwood voluntarily dismissed its federal case.  Arguably, this conduct goes beyond the mere filing of a complaint without probable cause and contains acts that could, under the circumstances, rise to the level of a procedural abuse.

2007-NMSC-047, ¶ 32 (emphasis in original).  Thus, the Supreme Court of New Mexico found that the plaintiff adequately alleged a malicious-abuse-of-process claim based on a procedural impropriety when the plaintiff specifically alleged that the defendant "*maintained*" the lawsuit against her and described the specific conduct that constituted the procedural impropriety.  2007-NMSC-047, ¶ 32 (emphasis in original).  Here, J. Kerns did not sufficiently allege the procedural impropriety.  He did not state that the Moving Defendants both initiated and maintained an improper lawsuit against him.  Nor did J. Kerns allege that the Defendants performed any behavior, other than filing the Complaint without probable cause, which would constitute a procedural impropriety.  "*Twombly* and *Iqbal* now require more factual allegations to see if the claim is plausible."  Martinez v. Martinez, 2010 WL 1608884, at *22 (D.N.M. March 30, 2010)(Browning, J.).

The Court has previously considered whether a plaintiff's complaint states a malicious-abuse-of-process claim.  First, in Martinez v. Martinez, the Court held that the plaintiff did not state a claim when the plaintiff did not clearly state how the defendants allegedly abused process.  See 2010 WL 1608884, at *23.  The plaintiff's complaint alleged that the defendants fraudulently reported information and "did not provide accurate commissions and tax reports from [the plaintiff] in his Depositions . . . to defraud Plaintiff."  2010 WL 1608884, at *23.  The Court could not determine in what context the defendant fraudulently reported the information -- "it

- 42 -

could have been in a deposition, at a trial or hearing, during a private meeting or settlement conference, or in conversation." 2010 WL 1608884, at *23. Without specifying how the defendant's behavior constituted a procedural impropriety, the Court concluded that the complaint did not state a claim for malicious-abuse-of-process based on a procedural impropriety. See 2010 WL 1608884, at *23.

Second, in Walker v. THI of New Mexico at Hobbs Center, the Court considered whether the plaintiff alleged a malicious-abuse-of-process claim based on: (i) initiating litigation without probable cause; and (ii) procedural improprieties. See 803 F. Supp. 2d at 1332. The Court engaged in two separate inquiries. See 803 F. Supp. 2d at 1332. First, it found that the complaint stated a cause of action for malicious-abuse-of-process based on lack of probable cause. See 803 F. Supp. 2d at 1331-32. Second, it concluded that the plaintiffs sufficiently alleged a malicious-abuse-of-process claim based on a procedural irregularity when the counterclaimants alleged that, in a specific pleading, the counterclaim-defendant "made allegations against them without evidentiary support or reasonable investigation," which harassed them and caused them to expend a substantial amount of money to discover the counterclaim-defendant's true basis for the allegations in the pleading. 803 F. Supp. 2d at 1332. The counterclaimants therefore precisely alleged the misuse of a procedural device, other than filing the complaint, and described the behavior that allegedly constituted an impropriety. See 803 F. Supp. 2d at 1332.

From these cases, it is clear that a complaint sufficiently alleges a procedural impropriety when it describes the behavior that constitutes the procedural impropriety. In Count IX, J. Kerns does not meet that requirement. He does not allege that the Moving Defendants performed any improper behavior other than initiating the prosecution. His First Amended Complaint alleges:

> The Defendants intentionally and maliciously caused a criminal prosecution to be initiated against Plaintiff Jason Kerns with knowledge that they had no lawful basis to do so.  The facts available to the Defendants would not warrant a reasonable officer to believe that their actions were appropriate. . . .  The unlawful and malicious abuse of process resulting in a wrongful prosecution was intentional, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff Jason Kerns' rights.

First Amended Complaint ¶¶ 203-207, at 27.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  Here, J. Kerns sufficiently alleges that the Moving Defendants filed a complaint without probable cause.  He did not, however, sufficiently allege that the Moving Defendants' behavior constituted an improper use of process based on a procedural irregularity or impropriety.  He did not even recite the elements of the malicious-abuse-of-process claim on this basis.  The First Amended Complaint states only that the Moving Defendants initiated a criminal prosecution against J. Kerns "with knowledge that they had no lawful basis to do so."  First Amended Complaint ¶ 203, at 27.  Notably, it does not allege that the Moving Defendants maintained a criminal prosecution against J. Kerns with knowledge that they had no lawful basis to do so, nor does it allege that the Defendants withheld evidence.  See Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 157, 2007-NMSC-047, ¶ 32 (concluding that the plaintiff stated a claim for malicious-abuse-of-process on the procedural impropriety basis by asserting that the defendants "maintained" a criminal prosecution against her).  Count IX's allegations would not put the Moving Defendants on notice that J. Kerns was alleging that they performed procedural improprieties.  See Conley v. Gibson, 355 U.S. 41, 47 (1957)(noting that the pleading must give "fair notice of what the . . . claim is and the grounds upon which it rests").

J. Kerns argues that he raised the procedural-impropriety argument elsewhere.  See Response at 16.  The portions of the record he cites, however, do not appear in the Complaint.

Rather, he raised the Moving Defendants' failure to turn over evidence in response to the Moving Defendant's summary judgment motion.   See Response at 17 (citing Plaintiffs' Response in Opposition to Defendant Board of County Commissioners of Bernalillo County, Darren White, Brian Lindley, Ralph Gonzales, and Lawrence Koren's Motion for Summary Judgment on the Basis of Qualified Immunity and on Other Grounds and Memorandum in Support at 18-20, filed August 11, 2009 (Doc. 201)("MSJ Response")).   Moreover, J. Kerns discusses the Moving Defendants' failure to turn over exculpatory information only in regard to his arguments that the Moving Defendants lacked probable cause.   See Response at 17 (citing MSJ Response at 18-20).   J. Kerns never asserts that the Moving Defendants' failure to turn over evidence constitutes a procedural impropriety which forms the basis of his malicious-abuse-of-process claim.   In fact, after the Court ruled in 2010 that "Lindley turned his files over to the FBI prior to the grand jury proceeding," April 12 MO at 33, J. Kerns did not challenge that conclusion on appeal.   In sum, J. Kerns did not properly plead his malicious-abuse-of-process claim on the grounds that the Moving Defendants' actions constituted a procedural impropriety.

The Court will not, as the parties agreed at the hearing, decide the summary judgment motion on the procedural impropriety prong of the malicious-abuse-of-process claim.   J. Kerns and the Moving Defendants argued that they had more facts to include before the Court decided the issue.   The Court promised the parties that, if it found that J. Kerns properly pled the claim, it would allow the Moving Defendants to file a separate summary judgment motion.   Conversely, if it found, as it does, that the claim is not in the case, the Court also should not decide the issue. Nonetheless, without deciding the issue, the Court gives its thoughts on the evidence before the Court.

The Court is inclined to conclude, on the requests before it, that a reasonable jury could

not infer that the Defendants' actions constitute an "irregularity or impropriety suggesting extortion, delay, or harassment." Durham v. Guest, 204 P.3d at 26.  J. Kerns states that the "evidence withheld from the defense team, includ[ed] the GPS data obtained from the helicopter, the aerial map BCSO used to estimate the location of the shooter, and ballistic notes and reports." Response at 17.  As noted, the Court ruled that Lindley turned over his files to the FBI before the grand jury proceeding. See April 12 MO at 33.  The Court based its conclusion on the Defendants' uncontroverted evidence that: (i) Assistant United States Attorney Charles Barth testified that Lindley turned the aerial map over to the United States Attorney and that it was used as an exhibit at the grand-jury proceedings, see Deposition of Charles L. Barth at 22:17-24:1 (taken May 18, 2009), filed August 17, 2009 (Doc. 205-1)("Barth Depo."); (ii) FBI Agent Heather Howard testified that the FBI never requested the GPS data, and it is uncontested that the GPS information was located in the helicopter, to which the FBI and United States Attorney had access before the grand-jury presentation, see Defendants Board of County Commissioners of Bernalillo County, Darren White, Brian Lindley, Ralph Gonzales, and Lawrence Koren's Motion for Summary Judgment on the Basis of Qualified Immunity and on Other Grounds and Memorandum in Support ¶¶ 137-142, at 22-23, filed July 17, 2009 (Doc. 182)("MSJ"); and (iii) Mr. Barth set discovery meetings with defense counsel and Haag, who prepared the ballistics notes, see Barth Depo. at 30:1-19; MSJ ¶ 144, at 23, and J. Kerns never suggests that Lindley possessed the ballistics notes.  Further, as the Tenth Circuit pointed out, Haag told Lindley during Lindley's investigation that the bullet fragments recovered from the helicopter "could have come from Mr. Kerns's FN rifle," Kerns v. Bader, 663 F.3d at 1179, and Lindley stated in his arrest warrant affidavit that Haag advised him that the ammunition that the FN rifle used and the recovered bullet fragments were consistent in several ways, see Lindley Affidavit at 1-4.  J.

Kerns' criminal defense counsel had access to the bullet fragments for his expert to examine. Moreover, Haag's notes, on which he based his opinion that J. Kerns' rifle could not be ruled out as the relevant weapon, were not exculpatory, nor would they have required J. Kerns' release. Until Haag agreed in April 2006 that the conclusions of J. Kerns' expert that other methodologies to examine the bullet fragments precluded a determination that J. Kerns' FN rifle was the one that could have produced the bullet fragments, Lindley had no reason to doubt Haag's prior opinion that the fragments could have come from J. Kerns' rifle. Thus, while the Court will not rule at this point on the Moving Defendants' motion for summary judgment on the procedural impropriety prong of J. Kerns' malicious-abuse-of-process claim, the Court is not inclined to allow the claim to proceed on the record before it.

   **IT IS ORDERED** that: (i) Defendants Board of County Commissioners of Bernalillo County, Brian Lindley, and Lawrence Koren's Motion to Reconsider on the Basis of Law of the Case, filed August 28, 2012 (Doc. 309), is granted; (ii) summary judgment is granted in favor of the Defendants on Count VIII and the probable cause prong of the malicious-abuse-of-process claim in Count IX and the claims are dismissed with prejudice; and (iii) the procedural impropriety prong of the malicious-abuse-of-process claim in Count IX is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Marc M. Lowry
Carolyn M. Nichols
Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*

Daniel J. Macke
Robles, Rael, & Anaya, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendants Board of Commissioners of*
      *Bernalillo County, Darren White, Brian Lindley,*
      *and Lawrence Koren*

Stephanie M. Griffin
Howard R. Thomas
  Assistant City Attorneys
Albuquerque City Attorney's Office
Albuquerque, New Mexico

      *Attorneys for Defendants Drew Bader, Matt Thompson,*
      *Russell Carter, and Mike Haag.*